## The J. W. French.

*(District Court, E. D. Virginia. October 21, 1882.)*

1. ADMIRALTY—PROCEEDINGS IN REM.
    A proceeding *in rem* is one in which the *thing*—the property seized—is itself sued instead of a sentient person, and in which, the property itself being sued, its owner is not recognized until he comes in, claims, and defends.

2. SAME—PROCEEDINGS, WHEN VOID.
    Where the property of libelant was condemned to sale in a proceeding to which he was not a party, and which was not a proceeding *in rem*, nor a proceeding against the vessel in any form, the order of sale is a nullity.

3. JURISDICTION—COLLATERAL EXAMINATION.
    A court may examine collaterally into the jurisdiction of another court to pass upon questions of title to property, and if the other court has done an act *coram non judice*, to disregard it altogether.

4. SAME.
    When a court possesses jurisdiction as to subject-matter and parties, it has a right to decide every question which arises in the case, and whether its decision be correct or otherwise, its judgment, until reversed, is binding upon the parties.

5. TRIAL BY JURY—CONSTITUTIONAL GUARANTY.
    In a proceeding at common law a citizen of the United States cannot be divested of his property except by verdict of a jury, under due process of law, in a proceeding in which he is in some manner a party, having opportunity to be heard, and having a day in court.

6. PENAL STATUTES—FORFEITURE.
    A state statute which provides that " any person " belonging to a steamer who engages in taking fish in violation of its provisions shall forfeit " his vessel," cannot be construed to mean *any* vessel which he employed in committing the offense; it cannot be enlarged by construction to mean that he shall forfeit the vessel of another person.

7. CONDEMNATION—PROCEEDINGS WITHOUT WARRANT OF LAW.

    A judgment of condemnation and sale of a vessel, without warrant of law, confers no right upon the sheriff to her custody. His possession in such case is tortious, and as against the process of the federal court he is a mere trespasser.

In Admiralty, on a Petitory and Possessory Libel.

*Sharp & Hughes,* for libelant.

*F. S. Blair,* Atty. Gen. of Virginia, *Arthur Segar,* and *James E. Heath,* for respondents.

HUGHES, D. J. This is a petitory suit in admiralty brought to try the title to a vessel (the steamer J. W. French) and to recover possession of it from one who is alleged to have been a tortious holder. This steamer, when process issued from this court, is alleged to have been in the possession of the sheriff of Elizabeth City county, Virginia, under an order for its sale by a judgment of the county court of that county. The libelant has never been a party to any proceeding of that court in which such an order of sale was made. The proceeding there was not one *in rem* which binds all the world, and in which the libelant could have become a party by appearance, and by answer or petition. The proceeding there was a criminal prosecution in which the crew of the steamer J. W. French, were all arrested, and in which her master, W. E. Overton, was indicted and tried, the rest of the crew having been discharged. The law of Virginia allows a steamer to be arrested, and, under the limitations hereafter stated, held by the court while such a prosecution of any person belonging to her is pending; and this vessel was under arrest pending this prosecution, which terminated with a verdict of guilty and a fine of one cent and costs against Overton, and his release from custody. The judgment against Overton in this verdict went on summarily to order a sale of the steamer by the sheriff, although the indictment had not charged that the steamer was the vessel of Overton,—"his vessel." There was no provision of law by virtue of which the libelant, W. R. Polk, could have appeared and become a party to this prosecution of Overton; although the record in the prosecution, pending which the steamer J. W. French was held, shows that W. R. Polk was the owner, and that this fact was in the cognizance of the court, and that the court failed to give Polk, the owner, a day to show cause against the sale of his property.

It may be conceded, in respect to ships and maritime property, that the owner may be bound by a proceeding *in rem,* though he do not appear; and in some cases even though in his physical person it was impracticable for him to appear. See *U. S.* v. *The Malek Adhel,*

2 How. 210, which was a proceeding in admiralty on a libel *in rem*. This results from the peculiar character and circumstances of maritime property and persons—a proceeding *in rem* being one in which a *thing, i. e.*, the property seized, is itself sued, instead of a sentient person; and in which, the property itself being sued, its owner is not recognized until he comes in, claims, and defends.

It is also well settled, generally, that every person is bound by the order of a court of competent jurisdiction in a proceeding to which he is a party, although only constructively so. But the case at bar belongs to neither of these classes. The property of this libelant was condemned to sale in a proceeding to which he was not a party, and which was not a proceeding *in rem*, nor a proceeding against the vessel itself, in any form.

The suit here is brought to test the title to a steam-boat; and one of the questions in the case is whether this court can examine into the validity of the proceedings of a court which undertook to divest the libelant of his vessel without a hearing, and to vest it in a purchaser. There is another question in this case. The libelant denies that the court which undertook to divest him of his ship had jurisdiction to make the order directing the sale by which that result might be effected; and he contends that that court was without such jurisdiction, not only because he, the owner, was not before it, and could not get before it, but because that court had no authority under the laws of Virginia, under which alone it could act, to make such an order of sale as it did make, even though he had been a party to the proceeding.

No principle is more thoroughly settled than that any court may examine collaterally into the jurisdiction of another court to pass on questions of title to property, and if the other court has done an act *coram non judice*, to disregard it altogether. When a court possesses jurisdiction as to subject-matter and parties, it has a right to decide every question which arises in the case, and whether its decision be correct or otherwise, its judgment, until reversed, is binding upon the parties.

"But if it act without authority, its judgments are considered as nullities, and form no bar to a recovery which may be sought, even prior to a reversal in opposition to them." . Judge LIVINGSTONE in *Fisher* v. *Harnden*, 1 Payne, C. C. 58.

"The power of a court is of necessity examinable to a certain extent by that tribunal which is compelled to decide whether its sentence has changed the right of property. The power under which it acts must be looked into, and

its authority to decide questions which it professes to decide must be considered." Chief Justice MARSHALL in *Rose* v. *Himely*, 4 Cranch, 268.

"Where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding in every other court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void, and form no bar to a recovery sought, even prior to a reversal in opposition to them. They constitute no justification, and all persons concerned in executing such judgments or sentences are considered in law as trespassers. This distinction runs through all the cases on the subject, and it proves that the jurisdiction of any court exercising authority over a subject may be inquired into in every court when the proceedings in the former are relied on and brought before the latter by a party claiming the benefit of such proceedings." Mr. Justice TRIMBLE in *Elliott* v. *Peirsal*, 1 Pet. 340.

In *Windsor* v. *McVeigh*, 93 U. S. 274, it was held that a sentence of a court, pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal. See, also, *Underwood* v. *McVeigh*, 23 Grat. 407, where a decree for the sale of property in a proceeding in which the owner had no day or hearing was held a nullity.

In the case of *Greene* v. *Briggs*, 1 Curt. C. C. 311, under a law of Rhode Island authorizing the seizure, condemnation, and destruction of spirituous liquors, certain liquors had been seized on a magistrate's warrant and afterwards condemned and ordered to be destroyed by a court of magistrates of the city of Providence; but previous to the destruction an action of replevin had been brought in the United States circuit court, and the goods had been seized in replevin by the United States marshal. The defendants filed an avowry setting out all the facts in answer to the action, and there was a demurrer to this plea. Mr. Justice CURTIS, in giving judgment for the plaintiff, not only went into a full examination of the validity of the proceedings of the magistrate's court, and its jurisdiction to pass the orders which were entered in the case, but treated them as nullities, holding in regard to the warrant of seizure that "an order by a justice of the peace, concerning a matter not within his jurisdiction, is void; and he, and all ministerial officers who execute that order, are trespassers." He cited *Wise* v. *Withers*, 3 Cranch, 331; Cowper, 140; 7 Barn. & C. 536; 5 Maule & S. 314; 11 Conn. 95; and 8 Wend. 200. He went on to say: "Such an order confers no authority to detain property, and is not a defense to an action of replevin." The proceedings before the magistrate's court were based upon a law of Rhode Island directing

spirituous liquors to be seized, condemned, and destroyed, allowing the owner to appear, but not allowing him the benefit of a trial by jury, except upon paying an onerous tax; and it was principally on that ground that the orders of the magistrate's court (answering to our county court) were treated as nullities by the judge of the United States court. That case is very similar in its leading features to the one at bar, except that Greene, the owner of the property seized, appeared and filed a claim to it before the magistrate's court, and was a party to the proceeding there.

The case of *Wise* v. *Withers*, cited by the judge, decided that a court of law may look into the jurisdiction of a court martial as to an order it had made affecting the rights and property of a citizen. I think it perfectly clear, therefore, that this court, in determining who owns and who has the right to the custody of this steamer, the J. W. French, may look into the legality of the proceedings in the county court of Elizabeth City county, under which the sheriff held custody of the steamer when she was taken by the United States marshal.

There are many cases in which it is held that when one court of general jurisdiction obtains jurisdiction of a controversy and custody of property which is the subject of that controversy, no other can take jurisdiction of either, especially of the property. This general principle is well settled. *Taylor* v. *Carryl*, 2 How. 583, is a leading case on this point. The same was held in *Orton* v. *Smith*, 18 How. 263; *Hagan* v. *Lucas*, 10 Pet. 400; *The Ship Robert Fulton*, 1 Payne, C. C. 620; *The Oliver Jordan*, 2 Curt. C. C. 414; *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334; and *Windsor* v. *McVeigh*, 93 U. S. 274; but it will be found in all these cases the custody of the officer first in possession of the property in controversy *was conceded to be lawful.* These cases are distinguished by that important fact from the case at bar, in which it is alleged that the sheriff's custody was unlawful, and therefore tortious.

But even in cases where the first custody is lawful, it was held by Mr. Justice MILLER, in *Buck* v. *Colbath*, speaking for the supreme court of the United States, that—

"The rule that among courts of concurrent jurisdiction, that one which first obtains jurisdiction of a case has the exclusive right to decide every question arising in it, is subject to some limitation, and is confined to suits between the same parties or privies, seeking the same relief or remedy, and to such questions or propositions as arise ordinarily and properly in the progress of the suit first brought, and does not extend to all matters which may by possibility be involved in it."

And Mr. Justice FIELD, speaking for the supreme court of the United States, held, in *Windsor* v. *McVeigh*, that—

"The doctrine that when a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds after gaining jurisdiction of the cause according to the established modes governing the class to which the case belongs, and does not transcend in the extent or character of its judgment the law which is applicable to it."

In this case the court said:

"All courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as civil and criminal, or to particular modes of administering relief, such as legal or equitable, etc. Though the court may possess jurisdiction of a cause of the subject-matter and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order the specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. * * * The judgments mentioned would not be merely erroneous—they would be absolutely void; because the court in rendering them would transcend the limits of its authority."

In the case at bar the court, in a criminal prosecution against one man, proceeded to decree the sale of the property of another man. The owner had no hearing at all, and of course had not the privilege of trying before a jury, on a defense made by himself, the issue of fact on which the condemnation of his property to forfeiture depended. The thirteenth clause of the bill of rights of Virginia provides that, in all controversies concerning property, the right of trial by jury shall be sacred, whether they be between man and man, or between the state and a citizen. Code 1873, p. 69. This guaranty of a jury is to the owner of the property himself, and it were a mockery to say that it was fulfilled by some one other than the owner having had the benefit of it. If the commonwealth obtains a verdict against Jones for a capital offense she cannot hang Smith. Smith has a right to be heard for himself, and to be tried by a jury sworn on the issue between the commonwealth and himself. As Smith's life and liberty cannot be affected by a verdict against another, so his right of property cannot be.

In *Greene* v. *Briggs*, before cited, it was held that a citizen of Rhode Island could not, under the constitution of Rhode Island, be deprived of his property without verdict of a jury, and unrestricted opportu-

nity of making defense even in a proceeding *in rem*, (not in admiralty.)   The privilege of appearing and making defense with trial by jury was subjected there to a tax.

In *Woodruff* v. *Taylor*, 20 Vt. 65, quoted approvingly by the United States supreme court in *Windsor* v. *McVeigh*, the supreme court of Vermont said: ·

"A proceeding professing to determine the right of property, where no notice written or constructive, is given, whatever else it might be called, would not be entitled to be dignified with the name of a judicial proceeding.   It would be a mere arbitrary edict. not to be regarded anywhere as the judgment of a court."

The mere seizure of property, either on a criminal charge or in a civil action, does not give jurisdiction to condemn it to forfeiture.

"The jurisdiction acquired by the seziure is not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges.   To this end some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential.   *   *   *   The manner of the notification is immaterial; but the notification itself is indispensable."   *Windsor* v. *McVeigh*, 93 U. S. 279.

The right of opportunity to appear and be · heard is too sacred to be denied, even to one occupying the *status* of an alien enemy.

In *McVeigh* v. *U. S.* 11 Wall. 267, Mr. Justice Swayne said, for the United States supreme court:

"The order [to strike from the record the owner's appearance, claim, and answer] in effect denied the respondent a hearing.   It is alleged he was in the position of an alien enemy, and could have no *locus standi* in that forum.   If assailed there he could defend there.   The liability and right are inseparable. A different result would ·be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject.   It would be contrary to the first principles of the social compact, and of the right administration of justice."

In *Bradstreet* v. *Neptune Ins. Co.* 3 Sumn. 601, Mr. Justice Story said:

"It is a rule founded on the first principles of natural justice that a party shall have an opportunity to be heard in his defense before his property is condemned, and that charges on which the condemnation is sought shall be specific, determinate, and clear;" and he characterized condemnations without these conditions "as mockeries, and in no just sense judicial proceedings," "to be deemed, both *ex directo in rem* and collaterally, as mere arbitrary edicts, or substantial frauds."

It follows, therefore, that, in order to the validity of its proceedings, the county court of Elizabeth City county must not only have

had jurisdiction of the subject on which it adjudicated, but it must have proceeded according to the mode usual in the condemnation of property, and authorized by law; and it follows further that this court may, in the present collateral proceeding, examine into the jurisdiction of that court and the regularity of its proceedings in ordering the sale of the steamer French by the sheriff of the county. I proceed, therefore, to that examination. The prosecution in the county court in question was commenced against all the crew of the steamer French, but continued only against her master, W. E. Overton. The indictment charged that Overton, captain and commander of a certain vessel, propelled by steam and known by the name of the J. W. French, on the eighth day of July, 1882, in the county of Elizabeth City, did take and catch a certain quantity of fish, by and with the said steamer J. W. French, against the form of the statute, etc., and the peace and dignity of the commonwealth. Other counts in the indictment charged, in the same form, that he caught "floating fish," and that he caught "floating fish known as alewives for the purpose of manufacturing said fish into oil and manure." The indictment nowhere charges that the steamer was the property of Overton, or, in the language of the statute under which he was indicted, was "his vessel." There was no proceeding against the vessel itself, either *in rem* or any other form. There was no charge in the indictment against the vessel herself; she was named only in the incidental manner above shown. On the trial the jury found a verdict in these words: "We, the jury find the defendant, Willis E. Overton, guilty, and assess his fine at the sum of one cent." On this verdict the court entered judgment as follows:

"And thereupon it is considered by the court that the commonwealth recover against the said Willis E. Overton the sum of one cent, the fine by the jurors in their verdict assessed, and the costs of the prosecution. And it is further considered by the court that the steamer J. W. French, described in the indictment, and on which the said defendant was captain, and *which the jury have found was used in taking fish, as charged in said indictment*, in the Chesapeake bay, contrary to law, together with her necessary apparel, the two seines and two small boats belonging to her, [nothing about apparel, seines, or two small boats appear in the indictment,] be condemned and forfeited to the commonwealth of Virginia. And it is further ordered that the sheriff of this county, after giving at least 20 days' notice, posted at the court-house door of this county, and at other public places in said county, sell on the first day of the August term of this court, between the hours, etc., of that day, at public auction, for cash, to the highest bidder, the said steamer J. W. French, and her necessary apparel, and the said two seines and small boats. And it is further ordered that the said sheriff do make report of said sale to this

court, and that the clerk of this court do make return thereof to the auditor of public accounts. And the said sheriff shall account for and pay the proceeds of said sale to the auditor of public accounts in the manner prescribed by law," etc.

It is plain from the terms of this judgment that it was intended to be a final condemnation of this steamer, her apparel, seines, and attendant boats; that it was an order for their sale, and a disposal of the proceeds of sale, in exclusion of all claims on the part of Polk, the owner, upon the property or the proceeds of sale. There is no pretense of a proceeding *in rem* against the steamer. There is no shadow of any proceeding specifically against the steamer or against the owner. She is mentioned only incidentally in the indictment against Overton, and upon a verdict of guilty procured against him alone of an offense so slight as to be condoned by a fine of one cent, the judgment of the court against Overton, after averring contrary to the fact that the jury had found that the steamer had been "used in taking fish," goes on to condemn it as forfeit, and to order its sale for the benefit of the treasury of Virginia.

This was a proceeding at common law; and while it is true that in actions *in rem* in admiralty property in the nature of ships may be divested from an owner without the verdict of a jury, yet I think it can be laid down with perfect truth that in any proceeding at common law, even proceedings *in rem*, a citizen of the United States cannot be divested of his property except by verdict of a jury, under due process of law, in a proceeding in which he is in some manner a party, having opportunity to be heard, and having a day in court. Condemnations and forfeitures are unknown in the practice of the United States courts, except upon specific proceedings against the property, and after the verdict of a jury. See *Union Ins. Co.* v. *U. S.* 6 Wall. 765; *Armstrong's Foundry,* 6 Wall. 769; *Morris' Cotton,* 8 Wall. 507. Proceedings *in rem* were unknown to the common law. 2 Brown, Civil & Adm. Law, 111; *Percival* v. *Hickey,* 18 Johns. 257, 292; 1 Kent, Comm. 378. Common-law courts have jurisdiction of them only by virtue of statutory enactment. If congress gives this proceeding in common-law courts without requiring trial by jury, it violates article 7 of the amendments to the national constitution. If the legislature of Virginia gives this proceeding to its courts, or the right of condemning property without giving to its owner the right of trial by jury, it violates section 13 of the bill of rights. Such, also, was the emphatic, I might almost say indignant, ruling of Mr. Justice CURTIS, one of the ablest of American judges, in *Green* v. *Briggs* already

cited; and may be regarded as a fundamental canon of English and American jurisprudence.

It were a mockery to say that the brief verdict just recited given against Overton, comprehended the steamer of Polk at all, even if it had been charged in the indictment to have been Overton's property; or could work a forfeiture of the property of Polk, the libelant here, in the eye of the great canon of English and American law which has been referred to. When we examine the laws of Virginia, under which alone the proceedings against this steamer could have been had, we shall find that the order of sale which has been recited was even in respect to them, without authority. The fifth section of the one hundredth chapter of the Code of Virginia, as amended by the act of March 6, 1882, (see Acts, 235,) after prohibiting the catching of alewives fish except in certain waters, contains two clauses, in these words:

"No boats propelled in whole or in part by steam shall be used for the purpose of towing or conveying boats that are used for the purpose of taking fish. Any person violating the provisions of this act shall, upon conviction, be deemed guilty of a misdemeanor, and shall forfeit his vessel, boat, or craft, and all purse-nets or seines used in taking or catching fish, and shall be fined not exceeding $1,000—one-fourth of which shall go to the informer."

The forty-sixth section of the same chapter of the Code provides that under the warrant for the apprehension of any person for the violation of this chapter,—

"The officer executing such warrant shall take possession of any vessel, boat, or skiff (with their tackle and appurtenances) which the defendant may belong to, or be using, or have used, in the commission of the offense for which he is prosecuted, and hold the same until the recognizance required be given, or until the defendant be acquitted. But if judgment be given against the defendant it shall be *part of the judgment* of the court, that, if the penalty and costs be not forthwith paid, all the property so seized shall be sold, and the proceeds accounted for as if it were the property of the defendant, seized under an execution for the satisfaction of the judgment."

Learned and industrious counsel have shown nothing in the Code or statutes of Virginia other than the foregoing sections under which the county court of Elizabeth City county could have acted in its condemnation of the steamer J. W. French. There is a section of another chapter (section 29 of chapter 109) which points out what court, and how it shall dispose of property already legally forfeited; but there is no law prescribing the manner of dealing with vessels, boats, and like property which have been used by offenders against law, except the sections which have been quoted. I am to examine,

therefore, whether the county court of Elizabeth City county complied with the law in its condemnation of the steamer of this libelant. The law forbids the catching of fish in certain parts of Chesapeake bay, and forbids the use of steamers anywhere for towing or conveying boats employed in catching fish; declaring that "any person" violating this act shall "forfeit *his vessel*, boat, or craft, and all purse-nets and seines used." This language imposes the inquiry whether it was the intention of the legislature to exact a forfeiture of any property other than that of the offender himself. The language of other acts, probably of all other acts of Virginia but this, in declaring the forfeiture of property employed in the commission of offenses, declares also, in clear and unequivocal terms, that the property employed in committing the offenses shall be forfeited. For instance the oyster act of March 6, 1882, passed contemporaneously with the one under consideration, after prohibiting the act of the offender, goes on to say that "the canoe, vessel, or boat so employed in catching, etc., shall be forfeited and sold." If it had been the intention of the legislature to forfeit the vessel used in catching alewive fish irrespectively of ownership, it would have employed language clearly and explicitly conveying that meaning, and would not have seemed to confine the forfeiture to vessels and property owned by the offender himself—to "his vessel, boat, or craft."

The language of the statute affecting the present case is that "*any* person" belonging to a steamer who engages in taking fish in violation of its provisions shall forfeit "his vessel." If in this phrase the law could be held to mean the vessel to which any offender might belong, then a mere cook on a steamer, who temporarily left his kitchen cabin and went out to engage with strangers in catching fish unlawfully, would thereby work a forfeiture of the steamer on which he was employed. To contend for such a construction of the phrase "his vessel" is to demonstrate its inadmissibility. The law speaks of boats, purse-nets, and seines, and contemplates that these latter may belong to fishermen; while steamers may belong to owners who are not fishermen, and seems to provide, in using the phrase "his vessel, boat, or craft, purse-nets and seines," that each offender against its provisions shall forfeit whatever property employed in the offense may belong to himself personally. This would seem to be a just and reasonable construction of the meaning of the term "his vessel," employed in this act, irrespectively of those canons of construction which all enlightened courts of justice apply to statutes imposing penalties and forfeitures. These latter, however, leave no room for doubt as

to the construction proper to be placed on the statute under consideration.

Forfeitures are odious in the eye of the law, and it is a cardinal principle that statutes of forfeiture shall be construed with the utmost strictness. The forfeiture here is imposed in the penal clause of a penal statute; and Mr. Bishop, (1 Crim. Law, § 250,) using the early English of the old common-law jurists, lays it down, in respect to penal laws, that "no case is to be brought by construction within a statute while it falls not within all its words. If a case is fully within the mischief to be remedied, and is even of the same class and within the same reason as other cases enumerated, still, if not within the words, construction will not be permitted to bring it within the statute." If, therefore, a statute says that W. E. Overton, on conviction of having committed an offense against its provisions, shall be punished by fine and imprisonment, and shall forfeit "his vessel" employed in the commission of the offense, the statute cannot be enlarged by construction to mean that he shall forfeit the vessel of another person. It can be construed to mean that he shall forfeit only the vessel owned by himself. It cannot be construed to mean *any* vessel which he employed in committing the offense.

Forfeitures being odious to the law, if the legislature intends that one man's property shall be forfeited for another man's offense, it should, and, I may add, always does, so declare in express, explicit, and unmistakable language. Neither Overton nor any seaman, fireman, engineer, or cook on board the steamer French could, by violating the fishing laws of Virginia under consideration, do more than forfeit any boat or craft or net or vessel which he himself actually owned, and no verdict of a jury found against Overton under this law could work a forfeiture of another's property.

Independently of this consideration, there was no warrant of law for the particular judgment of condemnation and sale which was rendered against this steamer, the J. W. French. The forty-sixth section of the one hundredth chapter of the Code simply provides for the detention of a vessel which has been employed in committing an offense, as a security for the payment of the fine and costs adjudged against the offender who used her. It directs the vessel to be held until the recognizance required of the defendant be given, or until he be acquitted; and, if judgment be given against the defendant, it requires it to be made "*part of the judgment* of the court that, if the penalty and costs be not forthwith paid," the vessel shall be sold, and the proceeds accounted for as under execution. If this provision

of law had been complied with, the steamer J. W. French would have been instantly released. The judgment against the vessel was void in having been couched in terms wholly unauthorized by the statute, both in respect to the vessel and to the disposal of the proceeds of its sale. It was, as to the owner of the vessel, void in not having employed the alternative words peremptorily directed to be inserted by the statute. No alternative was given to the owner of the vessel or her master to redeem her possession by the payment, even "forthwith," of the fine and costs adjudged against Overton, which, in point of fact, were paid forthwith. Not only was this requirement violated, but, without the warrant of any law known to the statutes of Virginia, this libelant's property was ordered to be sold for Overton's offense—itself pronounced by the jury to have been of the most trivial character.

The judgment of condemnation and sale, being without warrant of law, could confer no right upon the sheriff to the custody of the vessel. His possession was tortious, and he held her against the process of this court only as a trepasser. I will so decree.

In regard to *The Steamer Grace*, heard at the same time with the case of *The French*, I do not think she can be held, under the law of March 6, 1882, liable to forfeiture for the act of one conceded not to have been her owner, and I will so decree in her case.