The opinion of the court was delivered by
Watkins, J.
The city, claiming to be a privileged creditor of the succession of the deceased for unpaid city taxes of the years 1871, 1873, 1874, 1875, 1876, 1877, 1878, 1879, 1880, 1881, 1882, 1883, 1884, *1137 1895, 1886, 1887 and 1888, with interest, and, averring that she has not been placed upon the provisional account and tableau filed at all, opposes same, and demands the right to be placed thereon, and paid the amount and interest due her “in preference to all other creditors.” To her petition of opposition is appended a schedule of all the tax bills evidencing her claims.
The record shows, and the fact is, that after paying all debts due by the estate, there still remains in the hands of the executor a cash balance of 311,000 for distribution amongst the legatees and heirs of the deceased.
The demands of the opponent are resisted upon the following grounds, viz:
1. That all the claims of the city, for the various years in question were reduced to judgments, and those anterior in date to 1878 are prescribed.
2. That under the Constitution of 1879, and laws enacted in 1877 and subsequent years, taxes can be collected from the property assessed and no other. In other words, counsel for the executor contend that since the passage of Act 34 of the Extra Session of 1877, and the subsequent adoption of the Constitution of 1879, taxes are claims in rein, and not obligations in personam; and that, forasmuch as the funds for distribution are not proceeds of property assessed, the city has no claim against them.
3. That all taxes assessed in 1879 and subsequent years were assessed against A. Mercier and C. Darcantel, jointly, and in no event can the city claim more than one-half the amount alleged to be due.
4. That the city has no right of action for the collection of taxes by suit.
5. That the judgments for taxes constitute res adjudieata against the claims of the city for taxes.
There was a general judgment against the city, and she has appealed.
In this court the counsel for the executor has filed a plea of prescription to the city’s opposition of one, two, three, five and ten years, in addition to all other defences previously urged.
*1138 I.
The first proposition that must be considered is whether the city has any right of action or proceeding against the Mercier succession, for the collection of taxes. The ready answer is that an opposition to a succession account is not a suit or action, but an answer; and, as the counsel for the executor states in his brief, at page fiver “ Under well-established rules of practice in this State, it is unnecessary to file any pleadings in (answer to an) opposition to an executor’s account. The opposition is open to all exceptions and defences, to be urged ore tenus, with the same effect as if such objections were specially pleaded,” etc.
“A party can not be called into court, and then have his capacity to stand in judgment'questioned.” 17 An. 251, Baker vs. Michinard; 39 An. 5, Pasteur vs. Lewis; 93 U. S. 283, Windon vs. McVeigh.
On an opposition no moneyed judgment can be rendered against a succession; only one recognizing the claim as entitled to be paid in due course of administration. O. O. 985, 986, 987, 1004, 1Q05, 1006.
The contention is raised on the oft quoted provision of the 210th. article of the Constitution,that “at the expiration of the year in which they are due the collector shall, without suit, * * advertise for sale the property on which taxes are due,” etc; and on those of the 218th article, extending same to the city of New Orleans and other municipalities in the State.
In City of New Orleans vs. Wood & Bro., 34 An. 732, we had under consideration and interpreted those articles, and said:
“ The objects in view were-the prohibition of the forfeiture of the property for non-payment of taxes, and the substitution of summary expropriation without suit to enforce such payment,” etc.
In Alexander vs. Hyman, 35 An. 301, we said: “The manifest object was to prevent the oppressive accumulation of costs, which had attended the indiscriminate institution of suits for the collection of taxes, and to substitute thereto a less expensive and more expeditious method of realizing the public revenue.”
The only purpose which animated the framers of those constitutional precepts was to speed the collection of taxes, and reduce the. cost of tax proceedings and sales.
*1139 This and like interpretations have been given those articles in different, preceding and succeeding cases. In Succession of Dupuy, 33 An. 260, we said:
“It is clear that the summary mode provided by said constitutional and statutory provisions did not necessarily exclude every other mode for the collection of taxes.V
In Reed vs. Creditors, 39 An. 120, we recognized the right of a Tax Collector to set up a direct claim for the amount of taxes due by way of opposition to a syndic’s account in an insolvent’s estate,, a large portion of which had been ignored, and omitted from the tableau of distribution, as in this case.
In aid of “ the method of summary expropriation ” for the collec-tion of taxes, the Legislature has, from time to time, provided additional modes, which we have repeatedly sanctioned as being legal,, and therefore constitutional. Of such a statute we had occasion to. say in State vs. Meyer, 41 An. 436: “If it were true that the State has no mode of collecting her taxes except by seizure and sale of the property assessed, it is no less true that she has an absolute right to enforce their payment in that mode. If the exercise of this right is .illegally thwarted and obstructed by a delinquent tax debtor, she is. clearly entitled to some remedy for such a wrong, and it would be passing strange if her own courts, which she so zealously holds open, to every citizen for the vindication of all legal rights, should be. hermetically sealed against herself alone.”
This principle has been incidentally recognized in Mullen vs. His Creditors, 39 An. 397, in which we said “the opposition of the City of New Orleans for taxes was properly maintained;” in Succession of Stewart, 41 An. 131, and in Brent vs. City of New Orleans, 6 So. Rep. 793; 41 A. 1098.
On the whole, we take it to be perfectly clear and a proposition well established in our jurisprudence, that there is a method of collecting taxes, independent of seizure and sale, exceptional in character though it be. In the absence of any positive, constitutional or-statutory prohibition against proceedings otherwise than by seizure and sale, it would seem that some other should exist ex necessitate rei,, if seizure was impossible or insufficient as a means of collecting a tax..
That the City of New Orleans is opponent, and not the State, can make no difference, because in matters of taxation the State is supposed to have parted with and temporarily delegated to that corpo *1140 ration a portion of her sovereignty, as an efficient means of self government, and quoad such opposition the city may be taken for the State. The Constitution declares that “the taxing power may be exercised by the General Assembly for State purposes, and by parishes and municipal corporations, under authority granted to them by the General Assembly, for parish and municipal purposes.” Art. 202.
Therefore, what it is permissible for the State to do, the City of New Orleans may do likewise.
We have thought it proper to collect and bring into prominent review all of the pertinent expressions of the court in relation to the constitutional provisions under examination, so that their purport may be clearly apprehended and understood. The substance of them is that judicial proceedings may be resorted to in aid of tax collections when a seizure may not prove an adequate or efficient mode of realizing revenue; or where, by some act of the tax payer, a seizure might prove inadequate. In the instant case, we are of the opinion that the city has a right to proceed by opposition. The deceased appears to have paid no taxes to the city for nearly twenty years, and the counsel of his executor is here urging prescription' against the city’s demands. It may be that much of the city’s taxes are extinguished or the privileges and mortgages securing them lost by the long delay. She should be permitted to urge whatever personal demand she may have against the funds in the delinquent tax payer’s succession before they are distributed as proposed, as it may be that the property assessed will not be sufficient to meet the city’s demands.
II.
The second proposition for our consideration is that taxes are claims in rem, and not obligations in personam, and are therefore not payable out of the funds in the hands of the executor, which are not proceeds of property assessed.
Under the law of 1871 all licenses and taxes were declared to operate as a lien and privilege on all the movable and immovable property of the tax payer, and that they should continue in force ■“until same be fully paid.” Sec. 87, Act 42 of 1871.
Presumably all taxes assessed in pursuance of that law affected all property of the tax payer, whether it formed part of that assessed *1141 or not. Bnt counsel for the executor contends that Act 34 of the Extra Session of 1877 restricted the effect of tax liens and mortgages, to the property taxed or assessed, “and declared that thereafter such privileges or mortgages” shall not affect any other property generally, belonging to the delinquent “taxpayer;” that this law was both prospective and retrospective in effect, and applied to taxes then assessed, as well as those to be assessed thereafter; and that, as taxes could not be collected by seizure out of property not assessed, there ceased to be any obligation on the part of the tax payer personally to pay the taxes at all.
There is no question of the fact that the law cited, and other laws in pari materia, operated a great hardship on the people of this State, and produced some of the most trying evils of that time. And there is no question of the fact that the Legislature of 1877 sought, so far as it was in its power, to lift the burden of accumulated taxes from the shoulders of the inhabitants by the passage of the act in question; but the 110th article of the Constitution of 1868 forbade the General Assembly from enacting any “retroactive law;” and the one in question was necessarily ineffectual for the accomplishment of the purpose intended. It did operate on all taxes thereafter assessed, to-wit, those of 1878 and 1879.
The act declares that “'all liens and privileges for all taxes and. assessments on real property, for any purpose whatever, already recorded, or which may be hereafter recorded, shall bear exclusively and alone upon the property taxed or assessed; that the sheriff * * in executing any writ of seizure and sale on any judgment for tax or assessment rendered against a delinquent tax payer for tax on real estate, shall not seize any other property than that designated in the tax receipt or assessment roll, as chargeable and liable for the tax or assessment so due; that the Recorder of Mortgages shall designate on their books the property described in said judgment as chargeable and liable for the tax or assessment. The effect of this statute was much the 'same as the constitutional and statutory provisions that are discussed in the preceding paragraph. It will be observed that this statute deals exclusively with the effect of tax liens and privileges on real estate, their registry in the mortgage office, and certain restrictions placed on seizures in collecting same; but it does not deal with the taxes, nor in any way affect the tax payer’s responsibility for their payment. That remained, such. *1142 as it was, entirely unaffected. In our opinion, neither the act of \ 1877, the Constitution of 1879, nor laws subsequently enacted, develare, either in express terms or by fair implication, that taxes are not personal obligations of the tax payer. That collectors of taxes are required to proceed against the property assessed; that taxes assessed affect only property assessed, with a lien and privilege; that / proceeding by seizure and not by suit is indicated — do not exclude / the idea of personal liability. On the contrary, all the reasoning and authority reproduced in the preceding paragraphs clearly indicate the existenoe of personal responsibility on the part of the tax payer.
The Constitution declares that: “Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, and all property shall be taxed in proportion to its value, to be ascertained as directed by law; * * * provided, that the tax payers shall have the right of testing the correctness of their assessments before the courts of justice.” Article 203.
It clearly indicates that, while it is the property that is taxed, it is the tax payer’s assessment.
All tax statutes and revenue laws provide in most stringent terms and ample provisions the mode for personal notices to, and demands ■ to be made of, the tax payer for the payment of the taxes in money. Such demands and notices are 'made conditions precedent to any proceedings for seizure and sale of the property assessed. If the tax payer did not owe the taxes at all, and could not be proceeded against personally for their payment, making demand for payment would be an idle ceremony, for no tax payer would be gracious enough to pay taxes he did not owe.
The revenue law of 1882 provides that all taxes, tax mortgages and tax privileges shall be “prescribed by five years from the date of filing the tax roll,” etc. Sec. 34, Act 96 of 1882.
The same provision occurs in the revenue law of 1886. Sec. 34, Act 98 of 1886.
If there was no personal obligation on the part of the tax payer why should the Legislature have provided a period of prescription, as applicable to the taxes themselves ? In whose favor could such prescription operate, if not that of the tax payer?
Judge Cooley defines taxes to be: “The enforced contributions from persons and property, levied by the State, by virtue of its sovereignty, *1143 for the support of the government and all public needs. The State demands and-receives them from the subjects of taxation within its jurisdiction, that it may be enabled to carry into effect its mandates and perform its functions; and the citizen pays from his property the portion demanded, in order that, by means thereof, he may be secured in the enjoyment of the benefits of organized society.” Cooley on Taxation, p. 1; Hilliard’s Law of Taxation, pp. 15, 26.
To a like effect are various State Supreme Court opinions of ability. Camden vs. Allen, 26 N. J. 398; Oakland vs. Whipple, 39 Cal. 115; Randall vs. Lakey, 40 N. Y. 517; Green vs. Craft, 28 Mississippi 70.
Mr. Desty defines a tax thus: “The taxis imposed on the person of the owner; for though property is resorted to for the purpose of ascertaining the amount of the tax, yet the individual and not the property pays the tax." 1 Desty on Taxation, p. V.
On account of the great importance of the question, which is made a controlling issue in this case, as well as the large amount involved, we have argued it as res nova, notwithstanding we have, in effect, twice decided it before. For in Succession of Stuart, 41 An. 131, we said: ‘ ‘ The taxes of 1880 and 1882 are still due the city, which remains an ordinary creditor for the amounts thereof and entitled to be paid accordingly.”
In Brent vs. City of New Orleans, 4 An. 1098, we held that “the Act of 1886 was never intended to release the purchaser at a confiscation sale from taaes assessed in his name against the property during his tenure. As he enjoys the fruits of the property, it is but just that he should bear its burdens.”
Our conclusion is that there is a personal obligation imposed on the tax payer to pay taxes independently of the value of the property assessed.
There can be no doubt that the State and city are creditors for taxes, which are secured on real estate assessed, and which is subject to seizure and sale, to enforce payment; but because they each have a lien thereon, are they precluded from ashing to be paid out of funds accruing to creditors and the heirs of the deceased? No. Why relegate them to seizure and sale of the property assessed, thus delaying collections and inflicting costs, when the taxes can be paid from money in the hands of the tax delinquent’s executor, and which is proposed for distribution, and out of which ordinary creditors, if *1144 such there were, could be paid. Is the holder of a note, secured by privilege or mortgage, and judicially recognized, bound first to proceed to seize and sell the property incumbered, before asserting his right to payment otherwise? Surely not. If he had an ordinary judgment, could he not, under ft. fa., seize money in bank, belonging to his debtor, and apply it to his claim? Undoubtedly. So, the rights of the city or the State are equally great, and, like those of private individuals, may be paid from the funds in the hands of the executor proposed for distribution.
III.
Before commencing our argument on the question of prescription, a few preliminary observations, in respect to pleas and evidence, will be necessary to a clear understanding of the issues involved.
(a) In the opposition of the city, claim is made for taxes for the years 1871 to and inclusive of 1889, except 1872. On these taxes judgments were rendered for those, only, of the years 1871, 1874, 1876, 1877, 1878, 1879 and 1882. As ten years’ prescription does not apply to taxes of 1878 and subsequent years, the plea of ten years only includes the taxes of the years 1871, 1874, 1876 and 1877. And as we held in Davidson vs. Lindop, 36 An. 765, and Reed vs. Creditors, 39 An. 115, and State ex rel. Jackson vs. Recorder, 34 An. 178, that the liens, privileges and mortgages securing the payment of taxes due the State and city prior to 1879 were practically imprescriptible ; and as there is no statute prior to the revenue laws of 1880 and 1882 which provides any prescription against taxes, the whole of the taxes, and tax liens and mortgages prior to 1882, pass out of the controversy, with the exception of such as are above mentioned as being covered by judgments prior to 1878. Inasmuch as since the enactment of the law of 1877, above referred to, no tax operates as a privilege or a mortgage on any other property than that assessed, there is no question of lien or privilege applicable to taxes of 1878 and subsequent years involved, because the funds for distribution are not proceeds of property taxed.
Thus we have the questions narrowed to (1) the ten years’ prescription as applicable to judgments for taxes antecedent to 1878, and (2) the five years’ prescription as applicable to taxes of 1882 and subsequent years. Inasmuch as the opposition of the city was filed on the 21st of August, 1888, even conceding the applicability of this *1145 prescription to city taxes, we have only to count five years prior to that date in order to ascertain what taxes are prescribed. But as we have ascertained that, under the law of 1882, taxes are prescribed by “five years from the date of filing the tax roll,” none of the taxes are prescribed, because there is no proof in the record to show at what date or dates the tax rolls of 1882, and previous years, were filed.
(b) In treating of the questions of prescription and res adjudicata, it must be borne in mind that this controversy is between a testamentary executor representing the legatees and heirs of the deceased and the city as the creditors of the deceased for the delinquent taxes of well nigli twenty years. No third person or mortgage creditor has any rights as opposed to those of the city, as in the case of Reed vs. Creditors. In all other respects this is a parallel case. It is quite true that in that case we held that certain judgments for city taxes formed res judicata as to the insolvent, yet the original assessments and tax claims were put in evidence, as appears to have been done in this case; and all were considered. In this case the tax claims were introduced on the part of the city without opposition by the executor’s counsel; and he in turn offered the tax judgments. Hence the whole may be considered together in ascertaining what they are, and. in determining what effect is to be given to them.
We do not regard such judgments as ordinary judgments for money. A tax judgment is but a means provided by revenue statutes for the collection of taxes. The mere existence of taxes presupposes an assessment, which has frequently been likened to a judgment. It would be a strange anomaly if the statute should require an assessment of city taxes to be further liquidated or authenticated by judgments. Such a decree does not possess any of the attributes of a judgment in the sense of the Code of Practice. Proceedings antecedent thereto do not present a eontestatio litis, because the exclusive evidence required is proof of an assessment. A tax judgment recorded in the mortgage office would not create a judicial mortgage on property not assessed for the tax. Such a judgment is not governed by the prescription defined in the Civil Code, because the judgments therein referred) to are such as are founded on pecuniary obligations Of'ordinary debtors in favor of creditors. Morris vs. *1146 Lalourie, 39 An. 49; Reed vs. Creditors, 39 An. 116; State vs. Viator, 37 An. 735.
(c) But it is satisfactorily shown that in 1880, and in subsequent years, taxes were assessed jointly to A. Mercier and C. Darcantel, and therefore the claim of the city must be restricted to one-half of the sums due for those years. This is conformable to our recent opinion in Rivers vs. Parker, Tax Collector, 42 An. —, and not inconsistent with the principles announced in Oteri vs. Parker, Tax Collector, 42 An. 374, and Insurance Co. vs. Levi, 42 An. 432. In one case the controversy was as to the validity of proceedings under an imqestioned assessment; and in the other it was as to the proceedings necessary to invalidate a questioned assessment.
The judgment appealed from should be so amended as to allow the city’s claim against the succession for all the taxes claimed, except one-half of those assessed in 1880 and subsequent years, but without any lien or privilege.
It is therefore ordered and decreed that the judgment be so amended as to award the City of New Orleans the full amount of her demands for taxes, except one-half the amounts assessed in 1880 and subsequent years, with interest according to law, but without lien, privilege or mortgage. That as thus amended said judgment be affirmed, with all costs to be taxed against the succession.
Mr. Justice Fenner dissents, and reserves his right to file a separate opinion.
Mr. Justice Breaux, not having been a member of the court when this case was argued and submitted, takes no part.