A. W. BENNETT, v. SARAH GRACE BENNETT.

(Filed September 7, 1905.)

DIVORCE—Alimony—Default—Judgment. Where in an action for divorce and alimony the court upon a proper showing orders the payment of temporary alimony, pendente lite, which is by the defendant ignored and a compliance therewith refused, and where the defendant, in default for answer or appearance, comes into court on the day said cause is set for trial asking leave to appear and defend the action upon its merits, without presenting his answer or showing any cause or reason why he has disobeyed the order of the court with reference to the payment of temporary alimony, the court grants the leave asked for, conditioned upon his compliance in seven days' time with such order of alimony, and he thereupon refuses to accept the leave granted upon such terms, and he does not show or offer to show his inability to comply therewith, and said cause is thereupon tried as upon default, no error is committed by the trial court.

(Syllabus by the Court.)

*Error from the District Court of Lincoln County; before Jno. H. Burford, Trial Judge.*

*Chas. B. Wilson, Jr.* and *Emery A. Foster,* for plaintiff in error.

*S. D. Decker, Fred A. Wagoner, Roy V. Hoffman* and *John Embry,* for defendant in error.

STATEMENT OF FACTS.

This is an action for divorce and alimony commenced in the district court of Lincoln county, the petition therein being filed on the 21st day of May, 1903.

The petition alleges cruelty of a gross and aggravated character as the grounds for divorce, and sets out a large list

of property possessed by defendant, A. W. Bennett, valued at $40.000.00 or more, and prays for a divorce and for alimony, and for the custody of the infant child of the parties. At the time of filing the petition the parties resided in the city of Chandler in said county, and the process of the court was issued and served on the defendant, as shown by the sheriff's return, by leaving a certified copy thereof at defendant's place of residence on the 22nd day of May, 1903, being the day following the filing of the petition. The record also shows that at the time of filing the petition (May 21) an application for temporary alimony and a restraining order was also filed, and on the same day a copy of this application and notice of presenting the same to the judge of said court for an order therein, was personally served upon the defendant.

The application, notice and service are as follows:

"APPLICATION FOR TEMPORARY ALIMONY AND RESTRAINING ORDER.

"Comes now the plaintiff Sarah Grace Bennett, and alleges and says:

"That she is the plaintiff in the action brought for divorce and permanent alimony in said court against the defendant; that she has charged in her petition against the defendant extreme cruelty, and that defendant is the owner of real estate and personal property of the reasonable value of $40.000.00 as she has been informed by the defendant and believes, and that she has set forth in her petition as near as she can a description of his real and personal estate. That he has upon receiving information from plaintiff that she intended to commence proceedings against him for divorce and alimony made disposition of quite considerable of his real estate as shown by record in said county, by having same con-

veyed to his son Harry M. Bennett, of the age of 11 years, who is his son by his first wife. And that said conveyance is without a valuable consideration, and was made for the purpose of defrauding your petitioner and applicant of her legal and equitable rights in said property. And that she asks that defendant be restrained from making any further disposition of any of his property, real or personal in the Territory of Oklahoma, and that until this action has been finally tried, and plaintiffs rights in the premises passed on by the court. That defendant be ordered to pay into court for the plaintiff the sum of $1,000.00 temporary alimony to support her and to carry on her suit, as she is unable on account of sickness and late confinement to do work of any kind or character. And that he also be ordered to pay into court for the support and maintenance of the child born to plaintiff and defendant the sum of $500.00 as temporary alimony, and the further sum of $500.00 for her attorneys; as she is unable and without means to pay counsel and carry on her suit. That the petition filed in said cause and affidavits will be presented to the court in support of this application.

"DECKER & WAGONER,
"Attys. for plaintiff.

"Territory of Oklahoma, Lincoln County, ss.

"Personally appeared before me a notary public Sarah Grace Bennett, who being by me first duly sworn says: That she is the plaintiff in the above entitled cause, that she has read the above and foregoing application, and the matters and things therein set forth are true.

"SARAH GRACE BENNETT."

"(Certificate and seal.)

"Albert W. Bennett, defendant in the above entitled cause: You are hereby notified that the above and foregoing application will on the afternoon of Saturday May 23, 1903, be presented to the Honorable John H. Burford, judge of said court at chambers in Stillwater, Payne county, Okla-

homa Territory, to be acted on by him and the petition filed in said cause referred to in said application and affidavits in support of this application will also be presented to said judge at said time and place.

"DECKER & WAGONER,
"Attorneys for plaintiff."

"AFFIDAVIT.

"Victor S. Decker, being first duly sworn, says: That on the 21st day of May, A. D. 1903, as agent for the plaintiff in the above entitled cause, that he went to the office of the defendant, Albert W. Bennett, and served an exact copy of the within application for temporary alimony and restraining order upon the said defendant, Albert W. Bennett, by offering to him an exact copy of said application for temporary alimony and informing him of the contents thereof, which application the said defendant, Albert W. Bennett, refused to receive.

"VICTOR S. DECKER,

"Subscribed and sworn to before me this 21st day of May, A. D. 1903.

"My Comm. expires March 6th 1906.

"RAY McELHINNEY,
"(SEAL) "Notary Public."

Application was made to the judge of said court at chambers in accordance with the notice served on the defendant, and thereupon the following order was by him made:

"TEMPORARY ORDER FOR ALIMONY.

"Now on this 23rd day of May, 1903, this cause comes on to be heard before Hon. Jno. H Burford, judge of the district court of Lincoln county, Oklahoma Territory, in chambers, in the city of Stillwater, O. T. upon the application and motion of the plaintiff for an order granting this plaintiff temporary alimony, suit money and attorney fees; the plaintiff appeared by her attorneys Decker & Wagoner, and the defendant appeared not.

"And the court being fully advised in the premises, from the petition of plaintiff, and the evidence adduced upon this hearing finds that the plaintiff should be granted temporary alimony and suit money and attorney fees herein.

"And upon further consideration of said application and motion, the court finds that the defendant should be restrained from in any manner disposing of his personal property or any of his real estate, as prayed for in said motion and application.

"It is therefore considered, ordered and adjudged that the defendant pay into the office of the clerk of the district court of Lincoln county, Oklahoma, within ten days from this date, the sum of one thousond dollars, for the use and benefit of the plaintiff, and for temporary alimony and suit money, and the further sum of one hundred dollars, as and for the payment of plaintiff's attorney fees.

"It is further considered, ordered and adjudged that the defendant, Albert W. Bennett, be and he is hereby restrained and enjoined from in any manner selling or disposing of or in any manner incumbering any of his real or personal property.

"JOHN H. BURFORD.

"Judge of the district court, of Lincoln county, O. T."

On the day before the filing of the petition, (May 20, 1903) the defendant, A. W. Bennett, made and executed to his minor son by a former marriage a deed to a large amount of the real property then owned by him. The grantee in this deed was at that time eleven years of age, and living in the state of Virginia, and the consideration expressed in the deed was "love and affection and $1.00" and was filed for record in the office of the register of deeds of Lincoln county on the day of its execution.

Defendant absconded from said county and from the Territory of Oklahoma soon after the filing of plaintiff's petition, and so far as the record shows did not return to this Territory until the month of February, 1904.

On July 21st 1903, an amended petition was filed making Harry M. Bennett the said minor son of the defendant a party defendant, and adding a more full and complete list and description of defendant's property in this Territory, but not otherwise changing or enlarging the allegation of cause for divorce set out in the original petition. Service under this petition was obtained by publication.

No appearance in said cause having been entered on the 19th of September, 1903, the court being then in session appointed a guardian *ad litem* for the said minor defendant Harry M. Bennett, and ordered answer to be filed in his behalf within five days, and on September 30 the answer of said defendant was duly filed. On the 17th day of February, 1904, an *alias* summons was issued in said cause, and returned by the sheriff of said county personally served upon the defendant A. W. Bennett. The answer day in this summons was March 12, 1904., On April 6, 1904, the defendant A. W. Bennett appeared specially in said cause and filed the following motion:

"In the District Court of Lincoln county, Oklahoma Territory.

"*Sarah Grace Bennett, plaintiff v. Albert W. Bennett and Harry M. Bennett, by his next friend and guardian, A. W. Bennett, his father, defendants.*

"Now on this sixth day of April, A. D. 1904, the same being one of the regular court days of the April term of the

district court within and for the county of Lincoln and the Territory of Oklahoma, the plaintiff appearing by her attorneys, and the defendant Albert W. Bennett appearing by his attorneys, this motion comes up for hearing on the motion of Albert W. Bennett, who appears specially by his attorneys for the purpose of this motion only and for no other purpose, to set aside the service of the summons in this case for the reason the same is false and untrue; to set aside the service of the *alias* summons herein for the reason the same was procured by fraud on the part of the plaintiff; and to have the court declare the notice of publication in this case of no force and effect so far as the same might affect the personal rights of the defendant, Albert W. Bennett, for the reason that the said notice of publication is not the proper method of serving this defendant with notice of the filings of the amended petition, which motion was by the court overruled, to which ruling of the court the defendant excepted.

"Whereupon the defendant, Albert W. Bennett, by his attorneys, offered to file his answer in this cause, instanter, which said offer was refused by the court for the reason that the said defendant is in contempt of this court by reason of his failure and refusal to comply with the order of the court, heretofore made, to pay to the plaintiff in this cause the sum of one thousand dollars as and for temporary alimony, and one hundred dollars as attorneys fees in this case, but made the further order that the said defendant should be permitted to file said answer within five days on condition that he purge himself of said contempt by complying with said order within that time; to which order of the court the defendant, Albert W. Bennett, excepted at the time.

"Jno. H. Burford.

"Judge."

"District Court of Lincoln County, O. T., April 6th, 1904; 3d judicial day of the April term, 1904.

"*Sarah Grace Bennett, v. A. W. Bennett.*

"DISTRICT COURT JOURNAL.

"Comes now the plaintiff and defendant by respective counsel and the defendant submits a motion to set aside the service of the summons herein, and the court being fully advised, it is by the court ordered that said motion be, and the same is hereby overruled. To which ruling of the court the defendant duly excepts; and now the defendant asks leave to file his answer herein, and it is by the court ordered that the said request be granted upon the condition that said defendant comply with former order of the court requiring said defendant to pay temporary alimony and attorneys fees, within five days from this date. To which ruling and order of the court the defendant duly excepts.

"On the 20th day of April, 1904, the cause was set for trial by order of the court on the 28th of that month, and said cause came on for trial, and was duly heard by the court on the 29th day of April, at which time the court made the following findings, viz:

"In the District Court of Lincoln County, Oklahoma.

*"Sarah Grace Bennett, plaintiff, v. A. W. Bennett and Harry M. Bennett, a minor, by his next friend and guardian, A. W. Bennett, defendants.*

"JOURNAL ENTRY.

"Now to wit on this the 29th day of April, 1904, the same being one of the regular judicial days of the regular April, 1904, term of the district court of Lincoln county. Oklahoma Territory, the above entitled cause came on for hearing and final determination on the regular assignment of causes. And the court finds that the plaintiff Sarah Grace Bennett, filed in said court on the 21st day of May, 1903, her petition asking for a decree of court dissolving the martial relations existing between plaintiff and defendant, A. W. Bennett, and also for $1000,00 temporary alimony to assist her in carrying on this suit and as support for herself and

minor child, James Richard Bennett, and the further sum of $500.00 as attorneys fees for her attorneys, and a just division of defendant's real and personal estate as permanent alimony, and that the conveyance made by the defendant A W. Bennett, to his son, Harry M. Bennett, minor, be declared as not affecting any right that plaintiff has in the property conveyed by the defendant, and for the care, custody and control of the child, James Richard Bennett.

"The court further finds that the defendant, A. W Bennett, was duly and legally served, personally, with summons in said action by leaving a certified copy of said summons at his usual place of residence in Lincoln county, Oklahoma, as shown by the return of the sheriff of Lincoln county endorsed thereon.

"The court further finds that the defendant, A. W. Bennett has failed and refused to comply with an order made by the court on the 23rd day of May, 1903, wherein the said A. W. Bennett was ordered and adjudged to pay to the plaintiff within ten days from said date, $1000.00 for the use and benefit of plaintiff, as and for temporary alimony and suit money, and the further sum of $100.00 as and for payment of plaintiff's attorney fees.

"The court further finds that said order was served on the defendant, A. W. Bennett by the sheriff of Lincoln county Oklahoma.

"The court further finds that the plaintiff, on the 21st day of July, her petition not having been pleaded to, filed in said court an amended petition for divorce on the same grounds, and for alimony, and in addition thereto asked that certain real estate, described in her petition, be awarded to her, being lots nineteen and twenty in block 28 in East Chandler, Lincoln county, Oklahoma Territory, the same being the homestead of plaintiff and defendant. And further that certain real estate described in plaintiff's petition which was at the commencement of plaintiff's action transferred by A. W.

Bennett by deed to Harry M. Bennett, the son of the defendant, a minor under the age of fourteen years, and a resident of the state of Virginia, be set aside and subjected to the payment of plaintiff's alimony, and that Harry M. Bennett, minor under the age of fourteen years was by his next friend, guardian and father A. W. Bennett, made a party defendant in said action.

"The court further finds that the defendant, Harry M. Bennett, a minor, on and after the filing of plaintiff's amended petition herein, has been duly and legally served by publication by the plaintiff, and that said action is one of the cases in which service by publication is authorized by law.

"That heretofore to wit, on the 19th day of September, 1903, the same being a regular judicial day of this court, all other persons failing to apply, Chas. B. Wilson, Jr., one of the attorneys for A. W. Bennett and as a friend of Harry M. Bennett, minor, moves the court to appoint a guardian *ad litem* for Harry M. Bennett, minor defendant, that Chas. B. Wilson, Sr., a member of the bar of said Lincoln county and an attorney at law, authorized to practice in all courts of record of said territory, a disinterested and capable person, was by the court appointed as guardian *ad litem* for the said minor defendant Harry M. Bennett, and thereafter, on the 30th day of September, 1903, the said minor defendant, Harry M. Bennett by and through his guardian *ad litem,* Chas. B. Wilson, Sr., appeared and answered herein as provided by law.

"The court further finds that after the filing of plaintiff's amended petition the defendant, A. W. Bennett, was duly and legally served, personally, with an *alias* summons in said cause, as shown by the return of the sheriff of Lincoln county, Oklahoma Territory, endorsed thereon.

"The court further finds that on the fifth day of April, 1904, the defendant, A. W. Bennett, appeared by his attorneys and asked leave to file his answer herein out of time,

which request was objected to by the plaintiff for the reason that the said defendant had failed to comply with an order theretofore made to pay to the clerk of the court for the use of the plaintiff, the sum of one thousand dollars as and for temporary alimony, and the further sum of one hundred dollars as and for temporary fees for her attorneys, and the court being advised that the defendant had not complied with said order or offered any excuse for his failure to do so, his application for leave to answer is refused until he shall comply with said former order or show cause why he has not, and he is given five days to make said showing, and in which to file his said answer.

"And this cause coming on for trial now on this 29th day of April, 1904, the plaintiff appears in person by her attorneys, S. D. Decker and Fred A. Wagoner, and the minor defendant, Harry M. Bennett appears by his guardian *ad litem,* Chas. B. Wilson, Sr., and by his counsel Chas. B. Wilson, Jr., and the defendant, A. W. Bennett, having failed to comply with the former order of the court or make excuse for not complying, and having failed to answer the petition of plaintiff herein, the said defendant, A. W. Bennett, is now called three times in open court, but makes default, and fails to plead or otherwise appear in said cause, and the said A. W. Bennett is by the court adjudged to be in default for an answer, and not entitled to answer or plead until he shall comply with the other (order) heretofore made," etc.

These findings of fact made by the court were followed by the judgment of the court awarding to the plaintiff the former homestead of the parties as her sole property, $6000.00 permanent alimony and $500.00 attorney fees, and costs of this action.

On April 30, 1904, defendant A. W. Bennett, filed in said court his notice of appeal, which notice, omitting the entitling of the cause, is as follows:

"NOTICE OF APPEAL.

"Notice is hereby given by the defendant Albert W. Bennett that it is his intention to appeal from the decree of the court in the above entitled cause of action, granting the plaintiff, Sarah Grace Bennett, a divorce from this defendant and decreeing her, the said plaintiff, alimony and suit money and the costs of the suit against this defendant.

"ALBERT W. BENNETT.

"By his attys."

From the foregoing judgment and decree the case comes to this court upon petition in error and a transcript of the record.

Opinion of the court by

GILLETTE, J.:  It is manifest from the brief of plaintiff in error filed in this case that but a single question is raised by this appeal calling for a review by this court, and that is:  Is it within the province and power of the district courts of the Territory in a divorce case where defendant has been personally served with summons and fails to appear or answer for nearly one year, and where he has also been served with an order for the payment of temporary alimony and fails and refuses to obey the order, and when the case is called for trial then and for the first time appears and asks leave to answer, to impose any terms or conditions to the granting of such leave?

The answer to this question must inevitably determine this case.

If the court must, under such circumstances receive the answer without terms or conditions of any kind or nature attached to the granting of such leave, then there was error in

the trial court, and the cause must be remanded for a new trial. On the other hand if, under such circumstances, the court may in its discretion impose any terms or conditions to the granting of such leave, and the filing of such answer, then there was no error and, unless there was an abuse of discretion, the judgment must be affirmed.

The very fact of asking leave of the court to answer, seems to the writer of this opinion to furnish the response to this inquiry. If the court could not impose terms, then the party has an absolute right to place his answer on the files of the court without any application to the court, and whether the court was willing or unwilling, and the request for leave to file the same was a mere formality, without significance, and tending rather to ridicule the court than to honor or respect its authority.

The case has been elaborately argued by counsel in their briefs, and we have therefore devoted to it more than ordinary attention, and have very carefully examined the cases cited and relied upon by the plaintiff in error.

As a basis for his argument, it is first contended that the plaintiff in error had never been legally convicted of any contempt of court.

It must be remembered that the petition was filed on the 21st day of May, 1903, and that on the same day a notice of the application for alimony *pendente lite* was served personally on the plaintiff in error, notifying him that the application would be heard before the judge of the court at chambers on the 23rd instant. The record shows that the application was presented, and the order for temporary alimony made, by the judge at chambers on the 23rd of May,

1903; also that the first appearance, and so far as the transcript shows, the only attention ever given by the plaintiff in error to said cause, was made by his counsel on the 6th day of April, 1904, nearly eleven months after the filing of the suit, during most of which time plaintiff in error had been absent from this Territory, though personally served with an *alias* summons on the 17th of February, 1904. The appearance, as shown by the transcript was a special appearance only for the purpose of challenging the jurisdiction of the court, and on the motion being overruled, "the defendant asked leave to file his answer herein." That defendant was in contempt of the order of the court for the payment of alimony, is neither denied or questioned; in other words, that he had been notified of the application, and that the order had been made by the court on the 23rd of April, 1903, in pursuance of the notice and motion, and that the order had been at once served upon him, and that he had never complied or attempted to comply with the same, and had offered no excuse or explanation for not complying, are all undisputed and unquestioned facts.

With this state of facts it is now gravely argued that because defendant A. W. Bennett had not been attached and brought before the court, formally arraigned and adjudged guilty of contempt, therefore the court could not impose any terms or conditions to the leave granting him permission to answer the petition several months after his time for answering had elapsed. It must also be noticed that this request was made without the slightest attempt to explain or excuse his laches, and also, what is quite as important, without disclosing the nature or character of the answer which he desired to make.

That the mercy of the court had so long permitted the defendant to go unpunished for his contempt we do not think should now be construed as establishing his innocence or entitling him to any favor at the hand of the court on that account. The record reads: "And now the defendant asks leave to file his answer herein, and it is by the court ordered that the said request be granted upon the condition that said defendant comply with the former order of the court requiring said defendant to pay temporary alimony and attorneys fees within five days from this date," which was afterwards extended to April 13.

This is the record complained of, and as to which plaintiff in error says: "Had the plaintiff in error, however, been in contempt of court a denial to him of any substantive right was error," and from thence proceeds to argue that it was not within the province or power of the court to refuse the leave to answer thus requested, or to attach any conditions to the granting of such request. Counsel then proceed to cite and quote at considerable length from the case of *Hovey v. Elliott,* 167 U. S. 409. We have examined that case with care, and because of the controling authority of that tribunal over this court, we feel called upon to explain at some length why we think the holding in that case is not controling in the case at bar. That was an action in equity growing out of the sale of some bonds, the object of the suit being to compel the defendants to account for the bonds or their value, upon the theory that defendants had acquired them with actual notice of pending litigation concerning them, and were bound by the result of the judgment rendered in the other action. This action had been put at issue by filing an answer, averring fraud and wrong doing on the

part of the plaintiffs in that suit, the answer alleging facts which, if found to be true, would have defeated a recovery by the complainants. After replication, testimony was taken at various times during the years 1875 and 1876. In June 1877 the complainants obtained an order from the supreme court of the District of Columbia requiring the defendants to pay over to the registry of the court the sum of $42,297.50, which had been paid to defendants by the receiver. This order was disobeyed, and thereupon the complainants in September, 1877, moved the defendants to show cause why they and each of them should not be punished for disobedience of the order as for a contempt. On December 8, 1877, the supreme court of the District of Columbia made a decree that "the rule upon the defendants to show cause why they should not be decreed to be in and punished as for a contempt of court, *etc.,* be made absolute, and that the said McDonald & White be taken and deemed to be in contempt of the aforesaid order." The decree then proceeds: "Unless McDonald & White, within six days from the entry of this order, and a service of the copy thereof upon their solicitors, shall in all respects comply with the said order of June 19, 1877, and pay into the said registry of this court the sum of $49,297.50, the answer filed by them in the cause shall be stricken out, and that this cause proceed as if no answer had been interposed."

The defendants not having complied with the order the answer of the defendants was stricken out and removed from the files of the court, and thereafter the cause was proceeded with as if no answer had been filed in the case. The bill was thereupon taken as confessed and decree rendered against defendants, and thereafter came to the supreme court of the

United States by writ of error. Upon this state of facts the supreme court in passing upon the case uses this language:

"In the view we take of the case, even conceding that the statute does not limit their authority, and hence that the courts of the District of Columbia are vested with those general powers to punish for contempt which have been usually exercised by courts of equity without express statutory grant, a more fundamental question yet remains to be determined, that is, whether a court possessing plenary powers to punished for contempt, unlimited by statute, has the right to summon a defendant to answer, and then after obtaining jurisdiction by the summons refuse to allow the party summoned to answer, to strike his answer from the files, suppress the testimony in his favor and condemn him without consideration thereof and without a hearing, on the theory that he has been guilty of a contempt of court. The mere statement of this proposition would seem, in reason and conscience, to render imperative a negative answer. The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends."

To much the same effect is the case of *McVeigh v. United States,* 11 Wall, 259 wherein the court says:

"In our judgment the district court committed a serious error in ordering the claim and answer of the respondent to be stricken from the files. As we are unanimous in this conclusion our opinion will be confined to that subject. The order in effect denied the respondent a hearing. It is alleged that he was in the position of an alien enemy, and hence could have no *locus standi in* that forum. The lia-

bility and the right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right of administration of justice."

Referring to the above case in *Windsor v. McVeigh*, 93 U. S. 274, speaking through Mr. Justice Field, the court said:

"The principal stated in this terse language is at the foundation of all well ordered systems of jurisprudence. Wherever one is assailed in his person or property, there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights and is not entitled to respect in any other tribunal."

This case of *Windsor v. McVeigh* was an action of ejectment for a tract of land situated in the city of Alexandria, Virginia. Under the act of Congress of June 17, 1862; "To suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes," the property had been seized by the marshal of the district, and a libel thereafter filed by direction of the attorney general, setting forth "that the owner of the property had, since the passage of the act, held an office of honor and trust under the government of the so-called Confederate States, and had given aid and comfort to the rebellion." Upon this libel the district judge ordered process of monition to issue as prayed, and that notice of the same be given by publication in a newspaper. Publication was made as directed, and the owner of the property appeared by counsel, and filed

a claim to the property, and an answer to the libel. Subsequently the district attorney moved that the claim and answer, and the appearance of the respondent by counsel, be stricken from the files, on the ground that it appeared from his answer that he was at the time of filing the same "a resident within the city of Richmond, within the Confederate lines, and a rebel." This motion was granted, and the claim and answer ordered to be stricken from the files, and the court thereupon immediately entered a decree condemning the property as forfeited to the United States. This was the state of facts upon which the court was passing in using the language above quoted.

It will be observed that in each and all these cases the defendant had appeared in due and proper time, and filed his answer therein. He was not in default, and he was not before the court asking for any favor at the hands of the court. He was then properly in court, and standing strictly upon his legal rights in reference to the action then pending, and in which he had been summoned to appear. He had submitted himself and his cause to the jurisdiction of the court, and was bound by any action it might take in regard thereto.

In the leading case of *Hovey v. Elliott, supra,* the case had been at issue for nearly two years, and considerable testimony in the case had been taken by deposition, before the order was made for the payment of money into the registry of the court, the non-compliance with the order being the sole cause and only excuse for the court striking out his answer, and the evidence taken in his behalf, declaring the case in default and ordering all proceedings on the part of defendants in the case to be perpetually stayed.

In concluding its decision in that case the court after pointing out the salient features of the case, concludes its opinion in these suggestive words: "and our opinion is therefore exclusively confined to the case before us."

It is most apparent that the facts in that case were widely and radically different from those in the case at bar. In that case a good and sufficient answer had been filed in due and proper time. In this case no answer had been filed or tendered, and no intimation given the court that the answer desired to be filed would have constituted any defense to the action if it had been admitted. In that case a large amount of testimony on the part of defendant had been taken by depositions and was on file with the court and after all this had been done the order for the payment of money in to the registry of the court was made. In this case no testimony had been taken, the order for the payment of alimony was made at the time of filing the petition, and defendant has never appeared in the case except to ask leave to file an answer without any explanation or excuse for his disregard of the order, and without alleging or ever pretending that he had any meritorious defense to the action.

It must be readily seen that in *Hovey v. Elliott* the defendant was not only rightfully in court, but he had certain existing and established rights there, and these rights were not merely denied, but they were swept away by the arbitrary order of the court, on the theory of thereby punishing him for contempt.

In this case defendant had never been in court, but had wilfully refused to appear therein, or to give the slightest heed to the proceedings therein. In that case the defendant was asking no favor or indulgence of the court. In this case

he is in default, and moving the court to grant him both favor and indulgence to wit, leave to appear and answer out of time, because of his wilful refusal to appear when summoned. In that case the order was to punish the contempt. In this case the order is a condition to granting the favor.

No doubt there is language in the case which by analogy may be applied to the case before us but when it is remembered the court expressly limits the decision to the case then before it, it is, to say the least, extremely doubtful whether the case furnishes any authority in a case such as is presented by this record. Most certainly the case was not presented upon the same state of facts as those presented in this case, and is therefore not an authority in point in this case, either upon the facts, or the subject matter of the action.

We cannot better at once express our approval of the decision in that case and our dissent from its application to the case before us, than by quoting the remarks of Lord Halsbury under somewhat similar circumstances, in the case of *Quinn v. Leatham* (1901) A. C. 495, wherein he said:

"Every judgment must be read as applicable to the particular facts proved or assumed to be proved, since the generality of the expressions which may be found there are not intended to be expositions of the whole law, but governed and qualified by the particular facts of the case in which such expressions are to be found;" and again, "That a case is only an authority for what it actually decides."

In the cases of *McVeigh v. United States,* 11 Wall, 259, and *Windsor v. McVeigh,* 93 U. S. 274, which were cases arising under the act of congress for the confiscation of the estates of "rebels," the property of the defendants had been attached by the sheriff, and a monition issued to the owners to

show cause why the estates should not be confiscated by the government, and to this order the defendants appeared and answered, setting up title to the property, and denying the right of the government to seize the same. The motion to strike out the answers alleged that defendants were rebels and alien enemies, and therefore had no right to be heard in defense of the action. This motion was sustained, and the answers stricken out and all rights to defend the actions denied them.

To this argument the supreme court in delivering its opinion replied:

"The order in effect denied the respondent a hearing. It is alleged he was in the position of an alien enemy, and could have no *locus standi* in that forum. If assailed there he could defend there. The liability and the right are inseparable."

And later on in the decision the court adds:

"It is difficult to speak of a decree thus rendered with moderation; it was in fact a mere arbitrary edict, clothed in the form of a judicial sentence."

This comprehensive language finds justification in the extraordinary circumstances of the cases then before it, and must be read as applicable to the facts then being considered.

In neither is there any fact or circumstance common to the case now under consideration. In each of these instances the party appeared in proper time, and filed his answer. He came into court at a time when he had a legal right to come, and therefore had a legal right in the court at the time he was summarily dismissed therefrom.

The case of *Foley v. Foley*, 52 Pac., 122, is also relied upon by plaintiff in error as an authority against the judg-

ment entered in this case. That was an action for divorce, and in that respect in point in this case. But the statement of facts reads:

"The defendant, Foley, interposed a demurrer to the complaint; but the court, on motion of plaintiff, struck out his demurrer, and gave judgment against him, as by default, for his failure to pay certain alimony ordered by the court, and for neglect and refusal to subscribe his deposition taken in the action."

It will thus be seen the defendant in that case was not in default, but was in court in proper time and standing on his legal right, asking no favor of the court beyond what the law gave him, and that these were arbitrarily brushed aside on the theory of thereby punishing him for the contempt. In the case at bar defendant was never in court, save to ask leave of the court to file an answer out of time, and this request was granted, and he was given seven days in which to file his answer, on condition that he now comply with the former order of the court. It is not claimed that the condition which the court attached to granting him the favor asked was onerous, unreasonable or impossible of performance by defendant, and therefore an abuse of discretion; neither was any answer tendered in the case, nor any claim presented to the court in any form demanding the right which is now for the first time presented by the defendant. Had the claim which is now presented in this court and urged with so much tenacity been presented to the court below, it may well be that the trial court would have modified the conditions attached to leave to answer, or have granted the leave without condition.

Only in extraordinary cases will this court reverse the order or ruling of a trial court, where the question upon which

the reversal is sought was never submitted or suggested to that court. It must not be forgotten that defendants answer was not stricken out; it was not refused, and the only cause or ground of complaint now is that the condition attached to the favor of the court in granting leave to answer, were beyond the limits of its power.

The powers and authority of the various courts of this Territory are specifically designated in section 9 of the organic act, wherein it is provided, *inter alia,*

"And said supreme and district courts shall possess chancery as well as common law jurisdiction, and authority for redress of all wrongs committed against the constitution or laws of the United States or of the Territory affecting persons or property."

This is undoubtedly a delegation of chancery power and authority, to the supreme and district courts of this Territory, as broad and comprehensive as that possessed by the chancery courts of England, and beyond all question confers power in those courts over the process, orders or judgments by them entered, and authorizes the exercise by them of a sound discretion in the manner and form of proceedings therein.

In view of the financial condition of the defendant we do not think that the terms imposed by the court upon the plaintiff in error as prerequisite to filing his answer were unreasonable or burdensome for the defendant to have complied with. Plaintiff in error made no effort to show or even complain that the amount was excessive, or that he was unable to pay, nor did he ever claim that he had any defense to the merits of the action. Under the facts in this case we do not think there was any abuse of discretion on the part of the trial

court in imposing the terms it did as a condition to defendant filing his answer in the case. It is impossible to read this record and not be convinced that the plaintiff in error wilfully and intentionally set the trial court at defiance, and both intended and attempted to evade and disregard any order or decree the court might make in the case. See *Mahar v. Mahar*. 5 Ok. 371.

We find no error in the record, and the decree of the court below will be affirmed.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.