## WINDSOR v. McVEIGH.

1. A sentence of a court, pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.
2. The jurisdiction acquired by the seizure of property, in a proceeding *in rem* for its condemnation for alleged forfeiture, is not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges for which the forfeiture is claimed. To that end, some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential.
3. In proceedings before the District Court, in a confiscation case, monition and notice were issued and published; but the appearance of the owner, for which they called, when made, was stricken out, his right to appear being denied by the court. *Held,* that the subsequent sentence of confiscation of his property was as inoperative upon his rights as though no monition or notice had ever been issued. The legal effect of striking out his appearance was to recall the monition and notice as to him.
4. The doctrine, that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it.

ERROR to the Corporation Court of the city of Alexandria, Va.

Ejectment for a tract of land situate in the city of Alexandria, Va. Finding and judgment for the plaintiff. The defendant sued out this writ of error. The facts are stated in the opinion of the court.

Argued by *Mr. S. F. Beach*, for the plaintiff in error, and by *Mr. Philip Phillips* and *Mr. John Howard*, contra.

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action of ejectment to recover certain real

property in the city of Alexandria, in the State of Virginia. It was brought in the corporation court of that city, and a writ of error from the court of appeals of the State to review the judgment obtained having been refused, the case was brought here directly by a writ of error from this court. Authority for this mode of procedure will be found stated in the case of *Gregory* v. *McVeigh*, reported in the 23d of Wallace.

The plaintiff in the corporation court proved title in himself to the premises in controversy, and consequent right to their immediate possession, unless his life-estate in them had been divested by a sale under a decree of condemnation rendered in March, 1864, by the District Court of the United States for the Eastern District of Virginia, upon proceedings for their confiscation. The defendant relied upon the deed to his grantor executed by the marshal of the district upon such sale.

The proceedings mentioned were instituted under the act of Congress of July 17, 1862, " to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes."

In July, 1863, the premises in controversy were seized by the marshal of the district, by order of the district-attorney, acting under instructions from the Attorney-General. In August following, a libel of information against the property was filed in the name of the United States, setting forth that the plaintiff in this case was the owner of the property in question; that he had, since the passage of the above act, held an office of honor and trust under the government of the so-called Confederate States, and in various ways had given aid and comfort to the rebellion; that the property had been seized in pursuance of the act in compliance with instructions from the Attorney-General, and, by reason of the premises, was forfeited to the United States, and should be condemned. It closed with a prayer that process of monition might issue against the owner or owners of the property and all persons interested or claiming an interest therein, warning them at some early day " to appear and answer " the libel; and, as the owner of the property was a non-resident and absent, that an order of publication in the usual form be also made. Upon this libel the district judge ordered process of monition to issue as prayed, and designated

a day and place for the trial of the cause, and that notice of the same, with the substance of the libel, should be given by publication in a newspaper of the city, and by posting at the door of the court-house. The process of monition and notice were accordingly issued and published. Both described the land and mentioned its seizure, and named the day and place fixed for the trial. The monition stated that at the trial all persons interested in the land, or claiming an interest, might "appear and make their allegations in that behalf." The notice warned all persons to appear at the trial, "to show cause why condemnation should not be decreed, and to intervene for their interest."

The owner of the property, in response to the monition and notice, appeared by counsel, and filed a claim to the property and an answer to the libel. Subsequently, on the 10th of March, 1864, the district-attorney moved that the claim and answer and the appearance of the respondent by counsel be stricken from the files, on the ground that it appeared from his answer that he was at the time of filing the same "a resident within the city of Richmond, within the Confederate lines, and a rebel." On the same day the motion was granted, and the claim and answer ordered to be stricken from the files. The appearance of the respondent was by his answer. The court immediately entered its sentence and decree, condemning the property as forfeited to the United States, reciting that, the usual proclamation having been made, the default of all persons had been duly entered. The decree ordered the issue of a *venditioni exponas* for the sale of the property, returnable on the sixteenth day of the following April. At the sale under this writ the grantor of the defendant became the purchaser.

The question for determination is, whether the decree of condemnation thus rendered, without allowing the owner of the property to appear in response to the monition, interpose his claim for the property, and answer the libel, was of any validity. In other words, the question is, whether the property of the plaintiff could be forfeited by the sentence of the court in a judicial proceeding to which he was not allowed to appear and make answer to the charges against him, upon the allegation of which the forfeiture was demanded.

There were several libels of information filed against the property of the plaintiff at the same time with the one here mentioned. They were identical in their allegations, except as to the property seized, and the same motion to strike from the files the appearance, claim, and answer of the respondent was made in each case, and on the same day, and similar orders were entered and like decrees of condemnation. One of these was brought here, and is reported in the 11th of Wallace. In delivering the unanimous opinion of this court, upon reversing the decree in the case, and referring to the order striking out the claim and answer, Mr. Justice Swayne said: "The order in effect denied the respondent a hearing. It is alleged he was in the position of an alien enemy, and could have no *locus standi* in that forum. If assailed there, he could defend there. The liability and right are inseparable. A different result would be a blot upon our jurisprudence and civilization. We cannot hesitate or doubt on the subject. It would be contrary to the first principles of the social compact and of the right administration of justice." 11 Wall. 267.

The principle stated in this terse language lies at the foundation of all well-ordered systems of jurisprudence. Wherever one is assailed in his person or his property, there he may defend, for the liability and the right are inseparable. This is a principle of natural justice, recognized as such by the common intelligence and conscience of all nations. A sentence of a court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal.

That there must be notice to a party of some kind, actual or constructive, to a valid judgment affecting his rights, is admitted. Until notice is given, the court has no jurisdiction in any case to proceed to judgment, whatever its authority may be, by the law of its organization, over the subject matter. But notice is only for the purpose of affording the party an opportunity of being heard upon the claim or the charges made; it is a summons to him to appear and speak, if he has any thing to say, why the judgment sought should not be rendered. A denial to a party of the benefit of a notice would be in effect to

deny that he is entitled to notice at all, and the sham and deceptive proceeding had better be omitted altogether. It would be like saying to a party, Appear, and you shall be heard; and, when he has appeared, saying, Your appearance shall not be recognized, and you shall not be heard. In the present case, the District Court not only in effect said this, but immediately added a decree of condemnation, reciting that the default of all persons had been duly entered. It is difficult to speak of a decree thus rendered with moderation; it was in fact a mere arbitrary edict, clothed in the form of a judicial sentence.

The law is, and always has been, that whenever notice or citation is required, the party cited has the right to appear and be heard; and when the latter is denied, the former is ineffectual for any purpose. The denial to a party in such a case of the right to appear is in legal effect the recall of the citation to him. The period within which the appearance must be made and the right to be heard exercised, is, of course, a matter of regulation, depending either upon positive law, or the rules or orders of the court, or the established practice in such cases. And if the appearance be not made, and the right to be heard be not exercised, within the period thus prescribed, the default of the party prosecuted, or possible claimants of the property, may, of course, be entered, and the allegations of the libel be taken as true for the purpose of the proceeding. But the denial of the right to appear and be heard at all is a different matter altogether.

The position of the defendant's counsel is, that, as the proceeding for the confiscation of the property was one *in rem*, the court, by seizure of the property, acquired jurisdiction to determine its liability to forfeiture, and consequently had a right to decide all questions subsequently arising in the progress of the cause; and its decree, however erroneous, cannot, therefore, be collaterally assailed. In supposed support of this position, opinions of this court in several cases are cited, where similar language is used respecting the power of a court to pass upon questions arising after jurisdiction has attached. But the preliminary proposition of the counsel is not correct. The jurisdiction acquired by the court by seizure of the *res* was not to condemn the property without further proceedings. The physi-

cal seizure did not of itself establish the allegations of the libel, and could not, therefore, authorize the immediate forfeiture of the property seized.   A sentence rendered simply from the fact of seizure would not be a judicial determination of the question of forfeiture, but a mere arbitrary edict of the judicial officer.   The seizure in a suit *in rem* only brings the property seized within the custody of the court, and informs the owner of that fact.  The theory of the law is, that all property is in the possession of its owner, in person or by agent, and that its seizure will, therefore, operate to impart notice to him.   Where notice is thus given, the owner has the right to appear and be heard respecting the charges for which the forfeiture is claimed. That right must be recognized and its exercise allowed before the court can proceed beyond the seizure to judgment.   The jurisdiction acquired by the seizure is not to pass upon the question of forfeiture absolutely, but to pass upon that question after opportunity has been afforded to its owner and parties interested to appear and be heard upon the charges.   To this end some notification of the proceedings, beyond that arising from the seizure, prescribing the time within which the appearance must be made, is essential.   Such notification is usually given by monition, public proclamation, or publication in some other form.   The manner of the notification is immaterial, but the notification itself is indispensable.

These views find corroboration in the opinion of Mr. Justice Story, in the case of *Bradstreet* v. *Neptune Insurance Co.*, 3 Summ. 601.  In that case, the action was upon a policy of insurance upon a vessel, the declaration alleging its loss by seizure of the Mexican government.   The defendants admitted the seizure, but averred that it was made and that the vessel was condemned for violation of the revenue laws of Mexico, and to prove the averment produced a transcript of the record of the proceedings of the Mexican court against the vessel, and of the decree of condemnation.   Among the questions considered by the court was the effect of that record as proof of the laws of Mexico, and of the jurisdiction of the court and the cause of seizure and condemnation.   After stating that the sentence of a foreign court of admiralty and prize *in rem* was in general conclusive, not only in respect to the parties in interest, but

also for collateral purposes and in collateral suits, as to the direct matter of title and property in judgment, and as to the facts on which the tribunal professed to proceed, Mr. Justice Story said, that it did not strike him that any sound distinction could be made between a sentence pronounced *in rem* by a court of admiralty and prize, and a like sentence pronounced by a municipal court upon a seizure or other proceeding *in rem;* that in each the sentence was conclusive as to the title and property, and, it seemed to him, was equally conclusive as to the facts on which the sentence professed to be founded. But the learned judge added, that it was an essential ingredient in every case, when such effect was sought to be given to the sentence, that there should have been proper judicial proceedings upon which to found the decree; that is, that there should have been some certain written allegations of the offence, or statement of the charge for which the seizure was made, and upon which the forfeiture was sought to be enforced; and that there should be some personal or public notice of the proceedings, so that the parties in interest, or their representatives or agents, might know what the offence was with which they were charged, and might have an opportunity to defend themselves, and to disprove the same. " It is a rule," said the learned judge, " founded in the first principles of natural justice, that a party shall have an opportunity to be heard in his defence before his property is condemned, and that charges on which the condemnation is sought shall be specific, determinate, and clear. If a seizure is made and condemnation is passed without the allegation of any specific cause of forfeiture or offence, and without any public notice of the proceedings, so that the parties in interest have no opportunity of appearing and making a defence, the sentence is not so much a judicial sentence as an arbitrary sovereign edict. It has none of the elements of a judicial proceeding, and deserves not the respect of any foreign nation. It ought to have no intrinsic credit given to it, either for its justice or for its truth, by any foreign tribunal. It amounts to little more, in common sense and common honesty, than the sentence of the tribunal which first punishes and then hears the party;— *castigatque, auditque.* It may be binding upon the subjects of that particular nation. But, upon the

eternal principles of justice, it ought to have no binding obligation upon the rights or property of the subjects of other nations; for it tramples under foot all the doctrines of international law, and is but a solemn fraud, if it is clothed with all the forms of a judicial proceeding."

In another part of the same opinion the judge characterized such sentences "as mere mockeries, and as in no just sense judicial proceedings;" and declared that they "ought to be deemed, both *ex directo in rem* and collaterally, to be mere arbitrary edicts or substantial frauds."

This language, it is true, is used with respect to proceedings *in rem* of a foreign court, but it is equally applicable and pertinent to proceedings *in rem* of a domestic court, when they are taken without any monition or public notice to the parties. In *Woodruff* v. *Taylor*, 20 Vt. 65, the subject of proceedings *in rem* in our courts is elaborately considered by the Supreme Court of Vermont. After stating that in such cases notice is given to the whole world, but that from its nature it is to the greater part of the world constructive only, and mentioning the manner in which such notice is given in cases of seizure for violation of the revenue laws, by publication of the substance of the libel with the order of the court thereon specifying the time and place of trial, and by proclamation for all persons interested to appear and contest the forfeiture claimed, the court observed, that in every court and in all countries where judgments were respected, notice of some kind was given, and that it was just as material to the validity of a judgment *in rem* that constructive notice at least should appear to have been given as that actual notice should appear upon the record of a judgment *in personam*. "A proceeding," continued the court, "professing to determine the right of property, where no notice, written or constructive, is given, whatever else it might be called, would not be entitled to be dignified with the name of a judicial proceeding. It would be a mere arbitrary edict, not to be regarded anywhere as the judgment of a court."

In the proceedings before the District Court in the confiscation case, monition and notice, as already stated, were issued and published; but the appearance of the owner, for which they called, having been refused, the subsequent sentence of

confiscation of his property was as inoperative upon his rights as though no monition or notice had ever been issued. The legal effect of striking out his appearance was to recall the monition and notice as to him. His position with reference to subsequent proceedings was then not unlike that of a party in a personal action, after the service made upon him has been set aside. A service set aside is never service by which a judgment in the action can be upheld.

The doctrine invoked by counsel, that, where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition, but, like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction: they are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. *Norton* v. *Meador*, Circuit Court for California. Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous: they would be absolutely void; because the court in rendering them would transcend the limits of its authority in those cases. See the language of Mr. Jus-

tice Miller, to the same purport, in the case of *Ex parte Lange,* 18 Wall. 163.    So it was held by this court in *Bigelow* v. *Forrest,* 9 id. 351, that a judgment in a confiscation case, condemning the fee of the property, was void for the remainder, after the termination of the life-estate of the owner.    To the objection that the decree was conclusive that the entire fee was confiscated, Mr. Justice Strong, speaking the unanimous opinion of the court, replied : " Doubtless a decree of a court, having jurisdiction to make the decree, cannot be impeached collaterally ; but, under the act of Congress, the District Court had no power to order a sale which should confer upon the purchaser rights outlasting the life of French Forrest (the owner).    Had it done so, it would have transcended its jurisdiction."    Id. 350.

So a departure from established modes of procedure will often render the judgment void; thus, the sentence of a person charged with felony, upon conviction by the court, without the intervention of a jury, would be invalid for any purpose. The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act, of no force beyond that of an advisory proceeding of the Chancellor.    And the reason is, that the courts are not authorized to exert their power in that way.

The doctrine stated by counsel is only correct when the court proceeds, after acquiring jurisdiction of the cause, according to the established modes governing the class to which the case belongs, and does not transcend, in the extent or character of its judgment, the law which is applicable to it.    The statement of the doctrine by Mr. Justice Swayne, in the case of *Cornell* v. *Williams,* reported in the 20th of Wallace, is more accurate.    " The jurisdiction," says the justice, " having attached in the case, every thing done *within the power of that jurisdiction,* when collaterally questioned, is held conclusive of the rights of the parties, unless impeached for fraud."    20 Wall. 250.

It was not within the power of the jurisdiction of the District Court to proceed with the case, so as to affect the rights of the owner after his appearance had been stricken out, and the benefit of the citation to him thus denied.    For jurisdiction

is the right to hear and determine; not to determine without hearing. And where, as in that case, no appearance was allowed, there could be no hearing or opportunity of being heard, and, therefore, could be no exercise of jurisdiction. By the act of the court, the respondent was excluded from its jurisdiction.                                    *Judgment affirmed.*

MR. JUSTICE MILLER, MR. JUSTICE BRADLEY, and MR. JUSTICE HUNT dissented.

NOTE.— *Gregory* v. *McVeigh,* also in error to the Corporation Court of the city of Alexandria, Va., was argued at the same time and by the same counsel as was the preceding case.

MR. JUSTICE FIELD delivered the opinion of the court.

This case is similar to that of *Windsor* v. *McVeigh,* and, upon the authority of the decision in that case, the judgment below is affirmed.

MR. JUSTICE MILLER, MR. JUSTICE BRADLEY, and MR. JUSTICE HUNT, dissented.