THE STATE v. THE PORT ROYAL AND AUGUSTA R. R. CO.

KING v. SAME.

1. ORDER — RECEIVER — RAILROAD — CORPORATION — APPEAL.— An order by a Circuit Judge authorizing a receiver of a railroad to expend funds belonging to the corporation is appealable.

2. ORDER — RECEIVER — RAILROAD — NOTICE — CORPORATION. — An order authorizing a receiver of a railroad to expend funds of the corporation, should not be made without notice to the parties interested in the fund.

3. RECEIVER—RAILROAD.—A receiver of a railroad may expend funds belonging to the corporation, without application to the Court, in emergencies to preserve the property and for the public good, relying on the Court to afterwards confirm such expenditures.

Before ALDRICH, J., Chambers, June, 1893. Reversed.

On the 2d of June, 1893, Judge Aldrich, upon the *ex parte* application of John H. Averill, receiver, made five orders in the above stated cases, in substance as follows: 1. Order allowing the receiver to sell and dispose of certain material and engines. 2. Order directing the receiver to make certain expenditures on the wharves and trestles of the company. 3. Order allowing the receiver to pay to himself, out of the receipts of the company, the sum of $500 per month. 4. General order as to the duties of receiver. 5. Order allowing the receiver to buy certain steel rails at auction. From these orders the defendant appeals.

*Messrs. Mitchell & Smith*, for appellant.

*Hon. D. A. Townsend*, attorney general, *Messrs. Smythe & Lee*, *W. J. Verdier*, and *Alex. C. King*, contra.

Nov. 25, 1895. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This, which is designated as the "second appeal" in the cases above stated, involves only the question of the validity of five orders, made by his Honor, Judge Aldrich, on the 2d June, 1893, and filed on the 6th June, 1893, authorizing certain acts to be done and certain expenditures to be made by John H. Averill, receiver of the Port Royal and Augusta Railway Company. It appears from the record that these orders were based upon the report of the receiver as to the condition and needs of the railway, without testimony other than said report, without reference to the master for inquiry, and without notice to appellants, who were parties to the actions. Their validity is assailed substantially upon two grounds: (1) That the cases had been duly removed to the United States Circuit Court for the district of South Carolina, and the State Court had thereby lost jurisdiction; (2) that the orders were made without notice to appellants, who had no opportunity to examine the testimony in support thereof, or to put in testimony in rebuttal, or to be heard, before the orders were granted.

Inasmuch as the first ground has been disposed of in an opinion filed in these cases on the 23d inst., it is unnecessary to consider it here. The respondents, however, make the preliminary question that these orders are not appealable, and we must first dispose of that question.

It will be seen from the cases hereinafter cited, that this Court has, in several cases, considered appeals from orders of a similar character, and, although the question here presented has not been distinctly made in any case, so far as we are informed, yet the fact that such appeals have been considered without exception affords some ground, at least, for regarding the orders as appealable; but, as that may not be sufficient, we will consider the

question as if it were entirely an open one.    There can be
no doubt that these orders, unappealed from, would be final
and conclusive of the necessity for, and propriety of, the
expenditures authorized by them when the receiver comes
to account for his receipts and disbursements, for it can
scarcely be supposed that the Court would then permit an
expenditure authorized by its order to be questioned on
such final accounting.    We think, therefore, that these
orders are now appealable.

Coming, then, to the second question, as above stated, in
this appeal, it would seem to be plain, upon well-settled
and fundamental principles, that no order or judgment af-
fecting the rights of a party to the cause should be made or
rendered without notice to the party whose rights are to be
thus affected; for otherwise a party would be prac-
tically deprived of his property without "the judg-
ment of his peers or the law of the land," in violation
of section 14, art. 1, of the Constitution, which declares
that "no person shall be * * * despoiled or disposed of his
property * * * but by the judgment of his peers or the
law of the land;" for one of the elements of the often-quoted
definition of the phrase, "the law of the land," given by Mr.
Webster in his great argument in the Dartmouth College
case, is: "A law which hears before it condemns, which
proceeds upon inquiry, and renders judgment only after
trial."    In *Windsor* v. *McVeigh*, 93 U. S., 274, which was
a case in which the validity of certain confiscation proceed-
ings, by which it was claimed that certain property had
been condemned and sold under the act of Congress of July
17, 1862, was brought in question, and held to be invalid
for want of notice to the owner of the property, with an
opportunity to be heard, Mr. Justice Field, in delivering
the opinion of the Court, used the following language,
which seems appropriate to the present inquiry: "Wherever
one is assailed in his person or his property, there he may
defend, for the liability and the right are inseparable.    This
is a principle of natural justice, recognized as such by the

common intelligence and conscience of all nations.    A sentence of a Court pronounced against a party without hearing him, or giving him an opportunity to be heard, is not a judicial determination of his rights, and is not entitled to respect in any other tribunal."    But we are not without express authority in our own State upon the point, to be found in *Hubbard* v. *Camperdown Mills*, 25 S. C., 496, which was very much like the present case, so far, at least, as one of the orders appealed from is concerned—that is, the order fixing the compensation of the receiver.    In that case, the Circuit Judge had granted an order, which, among other things, directed the master to inquire and report what would be a suitable fee for the counsel of the receiver. This order was made *ex parte*, and the reference was held without notice to appellants, and without an opportunity for them to offer testimony, or to be heard, as to the matters referred to the master.    It was held that, while the counsel for the receiver was entitled to a fee out of funds in his hands, yet there was error in the mode pursued to ascertain the amount of such fee, and that the reference for that purpose should be upon notice to the parties interested, or their counsel.    Upon that ground—the want of notice—the order was reversed.    In the opinion of the Court the following language is used: "Upon general principles, fully recognized by all courts in the administration of justice, it would seem to be clear that no order should be granted whereby the property of one man will be subjected to the payment of an alleged debt to another, until the person whose property is so to be charged has had an opportunity to be heard as to the justice and amount of the charge to be made."    And, after distinguishing that case from *Nimmons* v. *Stuart*, 13 S. C., 445 (a case cited by counsel for respondent), and explaining and limiting the case of Nimmons, the following language is used: "But, while this may be sufficient to distinguish this case from Nimmons *v.* Stuart, we desire to take this occasion to express our dissatisfaction with so much of that case as gives

countenance to the idea that a reference to ascertain the amount of a fee to be charged on a fund under the control of the Court should ever be *ex parte*. The parties interested in the fund have a right to be heard both by evidence and argument, if they so desire, before the property or fund to which they are entitled is subjected to a charge of any kind; and, hence, notice of such a reference is always necessary." The case of Hubbard *v.* Camperdown Mills, which has been expressly recognized and followed in the recent case of *Cobb* v. *Fant*, 36 S. C., 1, is conclusive of the question here presented. We may also refer to the following cases, as showing the necessity for notice of an application for an order affecting the rights or interests of the parties before the Court: *Ex parte Williams* (*In re Campbell* v. *Charleston Co.*), 7 S. C., 71, which case also shows that the party who seeks to set aside, by appeal, an order granted without notice, need not first apply to the Circuit Court to set aside such order, as seems to be contended for by counsel for respondents in the case now before the Court. Also, *State* v. *Parker, id.*, 235; *Rice* v. *Mahaffey*, 9 S. C., 281; *Ex parte Mitchell*, 12 S. C., 83; *Ex parte Apeler*, 35 S. C., at page 421. In view of these authoritative decisions, which are not only binding upon us, but which, in our judgment, are well supported by reason, we must conclude that the orders appealed from should be set aside, upon the ground that they were granted without notice to the parties interested in the fund sought to be charged.

We do not pass upon, or even consider, the question of the necessity for, or propriety of, the expenditures or acts authorized by these orders, for, under our view, such a question cannot properly be considered until the parties interested have been afforded the opportunity to be heard, both by testimony and argument, if they so desire. Hence, our judgment vacating these orders will be without prejudice to the right of the receiver to renew his application, upon proper notice, for such or similar orders.

It cannot be denied that authorities may be, and have

been, cited by counsel, in his very able argument for respondents, to the effect that notice is not an essential prerequisite to the granting of such orders as are here appealed from. But it will be observed, that while this doctrine has been laid down by text writers, and *dicta* to the same effect are to be found in opinions of the Supreme Court of the United States, there are but few cases in which the point has been distinctly decided; and it is stated in most of the authorities cited, that the better practice is to give notice of the application for the order. But, in view of our own decisions, and in view of the further fact (to which we cannot close our eyes) that some courts have gone much further than we are disposed to go, in sanctioning the acts of receivers in dealing with railroad property, we feel compelled to adhere to the rule, as declared by our own decisions, *supra*, that notice is necessary. We are not to be understood as questioning the well settled doctrine, that the Court, upon a proper application for that purpose, may authorize a receiver to make all such outlays as may be necessary for the protection and preservation of the property committed to his charge, in order to render the same as efficient for yielding an income as practicable, and may also sanction all such outlays as may have been made, in good faith, without such previous authority, to effect the purposes indicated. This is the extent to which the cases of *Ex parte Benson*, 18 S. C., 44, and *Ex parte Carolina Nat. Bank*, *Id.*, 289, cited by counsel for respondent, go, as neither of them touch the question of the necessity for notice. It is true that, in the management of railroad property especially, emergencies may and do arise, requiring the promptest action on the part of the receiver, involving the expenditure of money, and in which the delay occasioned by an application to the Court, on notice to the parties interested, might involve disastrous consequences, not only to the property committed to his charge, but also to the public interests. Such an emergency might, and probably often does, occur, not admitting even of the delay occasioned

by an *ex parte* application to the Court; but, in all such cases, the receiver must take the responsibility of acting, relying upon the Court to approve his action upon a proper showing of its necessity or propriety, as the Court would undoubtedly do. As is said in Gluck & B. Rec., p. 347, § 86: "The duties and obligations of assignees and trustees are so similar to those of receivers as to justify the application of the same legal principles to the determination of the measure of the latter's obligations and duties."

Now, if an ordinary trustee, to whom has been committed the care and management of certain property, should encounter a sudden emergency, threatening the destruction or injury of such property, it would be his duty to take such steps as might be necessary to prevent such loss or injury, relying upon the Court to approve his action, and provide for his reimbursement out of the trust fund for any expenditures properly incurred by him in preserving the property. We do not see why the same principle should not apply to receivers.

The judgment of this Court is, that the orders appealed from be reversed, without prejudice to the right of the receiver to apply to the Court, upon proper notice, for similar orders, or, in case such orders have already been acted upon, to apply to the Court, upon proper notice, to approve and sanction such acts as may have been done, or such expenditures as may have been incurred, under the supposed authority of said orders.