[No. 6571.  Decided September 6, 1907.]

PORTLAND AND SEATTLE RAILWAY COMPANY, *Respondent*, v.
CHARLES E. LADD *et al., Appellants*.[1]

CONTINUANCE—ABSENCE OF PARTY. It is not an abuse of discretion to deny an application for a continuance on the ground of the absence of one of the parties holding a one-third interest in the property in dispute, where it does not appear that his testimony or presence was necessary at the trial.

EVIDENCE—DOCUMENTARY—MAPS. In a condemnation proceeding, maps showing the location of the railroad are admissible as illustrative of the evidence of the witnesses, where they are shown to be accurate by witnesses who had scaled the maps and compared them with the government field notes, although such witnesses had not surveyed the ground or made the maps.

APPEAL—REVIEW—EVIDENCE—HARMLESS ERROR. In a condemnation proceeding the admission of improper maps as to the location of the road is harmless error, where there was no dispute as to the location, and the only question for the jury was as to the value of the land taken.

LIS PENDENS—EMINENT DOMAIN. Bal. Code, § 4887, authorizing the filing of a *lis pendens,* in all "actions affecting the title of real property," applies to condemnation proceedings, and subsequent purchasers are bound by the proceedings.

EMINENT DOMAIN—DAMAGES—TO PROPERTY NOT TAKEN—VALUE. In condemnation proceedings, where defendants claimed damages to land not taken valuable as a quarry, for the reason that the stone could not be profitably quarried without taking and throwing it down on the lands taken, and also, as the evidence showed, upon lands owned by the railroad company, the court properly instructed the jury that no damages could be allowed for the injury to the quarry if it could not be profitably worked except by throwing rock upon the lands already owned by the railroad company.

RUDKIN, J., dissenting.

Appeal from a judgment of the superior court for Skamania county, McCredie, J., entered August 20, 1906, on the verdict of a jury awarding damages in a condemnation proceeding. Affirmed.

[1]Reported in 91 Pac. 573.

*Teal & Minor* and *W. A. Johnson*, for appellants.

*James B. Kerr* and *George T. Reid*, for respondent.

Mount, J.—This appeal is prosecuted from a judgment based upon an award for damages in condemnation. The errors assigned will be considered and decided in the order assigned in appellants' brief. The facts necessary to an understanding of the points made will be stated as each point is considered.

It is first argued that the court erred in denying a motion for a continuance. The legal title of the land sought to be appropriated stood in the name of Charles E. Ladd and wife, but the equitable title was in Ladd and wife and the Columbia Contract Company, a corporation, in the proportion of one-third in Ladd and wife and two-thirds in the Columbia Contract Company. On June 8, 1906, a preliminary order was made in condemnation, adjudging the land sought by the railroad company a necessary public use, and ordering a jury to assess the damages in favor of the owners.

On June 21, 1906, notice was served on appellants' attorneys that a jury would be summoned for the 12th day of July, 1906, to determine the question of damages, and the jury was accordingly summoned for that day. On July 12, 1906, at the time fixed for the trial, a motion was filed by attorneys for Mr. Ladd, asking for a continuance of the trial upon the ground that Mr. Ladd was absent in some eastern state and was not advised of the time when the trial was to take place, and counsel could not locate him. The affidavit in support of the motion showed diligence of counsel in trying to locate Mr. Ladd; but there was no showing that counsel were dependent upon Mr. Ladd, or had relied upon him, to furnish evidence or the facts in the case, or that Mr. Ladd was a material witness, or that other witnesses were not at hand to fully establish all the facts upon which the appellants relied.

The granting or refusing of a continuance of a trial rests largely in the discretion of the trial court, and will only be

reviewed for abuse. *Maloney v. Stetson & Post Mill Co.*, 46 Wash. 645, 90 Pac. 1046. We are satisfied the court did not abuse its discretion in this case, because of the failure to show the facts above stated, and because the actual owners of an undivided two-thirds interest in the property were present. In fact, the pleadings show that the whole property was purchased by the Ladds and the Columbia Contract Company for use as a stone quarry, and that the same was to be operated by the appellant Columbia Contract Company, which company was present at the trial by its officers. There was therefore, no error in denying the motion for a continuance.

Appellants next contend that the court erred in receiving in evidence certain maps, marked exhibits A, B, D, and F, and in denying the motion to exclude these maps after they had been received in evidence. The points made are that the maps were not prepared by the engineers who made the surveys upon the ground, and also that the maps did not agree with themselves. There seems to have been no dispute in the evidence as to the exact location of the railroad line upon the ground, or of the amount of land sought to be appropriated, which was fifty feet on each side of the center line of the railway as staked upon the ground. The maps were not offered or received as evidence in themselves of the location of the line, but only as illustrative of the testimony of the witnesses testifying in relation thereto, and therefore were admissible, even though they were not made by the persons who made the surveys upon the ground, where they were shown to be accurate. 17 Cyc. 412. The witnesses who testified in regard to these maps all testified that the maps were accurate and showed the location of the line as laid out upon the land. It is true, these persons neither surveyed the ground nor made the maps, but they testified that they scaled the maps and compared them with the government and other field notes, and found them to be accurate. This was sufficient to entitle the maps to go in evidence as a part of the testimony of the witnesses.

It is true, one of the maps offered did not coincide with the others in all particulars, but this variance was explained so as not to mislead any one. But, if all the maps were improperly in evidence, it is difficult to see any prejudicial error, because there was no dispute as to the location of the railway line or the amount of land sought to be taken. The questions for the jury were, what is the value of the land taken, and the damage to the land not taken. Neither question was affected by the maps when the line was actually staked upon the ground and had previously been adjudged necessary for a public use. It is true, the appellants claim their land extended further east than was admitted by the respondent, and therefore gave them ninety or one hundred feet more land to the east of the base of Castle Rock, which appellants sought to show is a rock quarry which is greatly damaged by the construction of the railway line. But the evidence of appellants on this subject showed conclusively that the stone could not be quarried from Castle Rock profitably unless the stone was thrown by a blast a distance of from two to four hundred feet beyond the appellants' line, even if the east line were located one hundred feet further east than the line claimed by respondent. The exact location of this line is therefore immaterial, because in any event the quarry could not be profitably operated without destroying property which appellants did not own and could not acquire.

Appellants next contend that the court erred in giving the following instruction:

"If the petitioner commenced a suit to appropriate a right of way across the Snooks Donation Land Claim and filed its *lis pendens* thereof in the auditor's office in Skamania county, Washington, and subsequent thereto claimants obtained an option or agreement to purchase a part of said Donation Land Claim, through which said proposed road extends, and subsequent thereto said case came on to be heard, and the damages were assessed and paid, and the right of way appropriated by the petitioner, then the petitioner is the owner of said right of way and claimants' said right to purchase is subsequent and subordinate thereto."

The trial court was evidently of the opinion that § 4887 of the practice act, Bal. Code (Pierce's Code, § 343), relating to the manner of commencing actions applies to cases of this character. It is argued by appellants that proceedings in condemnation are special proceedings, and therefore that § 4887, which relates to the filing of a *lis pendens* in actions affecting the title to real property, does not apply to this class of cases. We are of the opinion that the section does apply to cases of this kind. While it is true that proceedings in condemnation are special in this state, and are therefore governed by all the requirements stated in the statute, yet where no provision is made for the protection of parties to such proceedings, the rules of common practice must necessarily apply. The statutes relating to the exercise of the right of eminent domain provide, at § 5637, Bal. Code (Pierce's Code, §5102), that any corporation authorized to appropriate land may present to the superior court of the county where the land is located, a petition describing the land sought, and setting forth the name of each owner, incumbrancer, or other person interested in the land, "so far as the same can be ascertained from the public records." The record owners or incumbrancers are therefore the only parties made necessary by this statute. The next section provides that a certain notice "shall be served on each and every person named therein as owner, incumbrancer, tenant, or otherwise interested" in the land. No provision is made in the act for the service of notice upon incumbrancers or purchasers of the land after the proceedings are begun. It is, no doubt, required that tenants or persons in possession are required to be served with notice; but incumbrancers or purchasers with notice after the proceedings are begun are, of course, bound by the record and take subject thereto.

In *In re Smith's Petition*, 9 Wash. 85, 37 Pac. 311, 494, this court said:

"It has been frequently said by courts that the taking of land by eminent domain is a proceeding *in rem*, and the ser-

vice of a constructive notice has been justified by the practice which prevails in that class of cases. But it is well known that proceedings *in rem* presuppose that the complaining party has a superior right to the subject of the suit, or a right to have it subjected to his claim, and that the first requisite is a seizure of the thing itself, after which follows notice. 'The theory of the law is that all property is in the possession of its owner, in person or by agent, and that its seizure will, therefore, operate to impart notice to him.' *Windsor v. McVeigh*, 93 U. S. 274."

It follows, of course, if these proceedings are *in rem*, subsequent purchasers are bound by the proceedings pending, and are bound to take notice thereof where possession is taken *prima facie* by staking the line upon the ground, as was the fact here. It is conceded by appellants that, in some states where there is no statute regarding *lis pendens*, the courts have held that one who purchases land after the proceedings are commenced takes subject to the proceedings. 2 Pomeroy, Equity Jurisprudence (2d ed.), § 632 *et seq.*; 2 Lewis, Eminent Domain, 338.

But it is argued that the common law rule is repealed by § 4887, which does not apply to this class of cases. Either the statute or the common law rule, one or the other, must be in force as regards this class of cases because, as seen above, no provision in reference thereto is made by the statute relating to eminent domain. We think the legislature used the term "actions affecting the title of real property," as applying to all actions and proceedings relating to such property, and for that reason made no provision in the eminent domain act for notice to purchasers or subsequent incumbrancers pending the suit. The giving of this instruction was therefore not error.

Appellants allege further that the court erred in giving the following instruction:

"You are instructed that if you find from the evidence that Castle Rock can only be profitably worked by blasting it in such a manner that portions of it would fall upon land now

owned by the railroad company, then you may disregard all the evidence of value as a quarry. The owners of Castle Rock are by law required, if they desire to quarry the same, to so quarry their rock as not to interfere with the rights of others. If you find from the evidence that petitioner herein owns a right of way across the Snooks Donation Land Claim and up to the land of defendants, then it is the duty of the defendants or claimants to quarry the rocks so as not to interfere or trespass upon this right of way, and you are not to consider the inability of defendants or claimants to use this right of way on the Snooks Donation Land Claim as an element of defendants' damages whereby the property not taken by this action is damaged. The damage you are to consider is confined to that which arises and naturally flows from the appropriation of the land for a right of way across defendants' land, which is sought by this suit."

The evidence shows that the right of way of the railway runs close to the base of a large rock, several hundred feet in height, the exact measurement not being shown, known as "Castle Rock;" that one face of this rock is toward the Columbia river, which is four or five hundred feet distant from the rock; that the railway runs between the rock and 'the river; that the appellants did not own all the land between the river and the rock; a large portion thereof was owned by the railway company. There was apparently no dispute that the land of the appellants sought by the railway company was not worth to exceed $50 per acre for agricultural purposes. The appellants claim that the land taken by the railway was a great damage to other lands of appellants not taken, by reason of the fact that Castle Rock was valuable as a stone quarry, because it contained about eighteen million tons of stone, and that the construction of the railway prevented appellants from quarrying the stone at a profit. The great burden of appellants' evidence was to the effect that, in order to work the rock, known as Castle Rock, at a profit, it was necessary to blast down great quantities of the rock at a time and throw the same toward the river. Otherwise the property could not be worked at a profit, and was therefore of no value.

This same evidence showed without question that, in order to do this, the rock would be piled high upon lands which appellants did not own, and could not acquire because such lands were already owned by the railway company. It requires no argument to show that, if appellants' property was so situated that it could not be utilized without injury to others, its use would not be permitted at all; and if the value of appellants' property was dependent upon other property which they did not own and could not acquire, then as shown by the appellants themselves, the property had no value and, of course, was not damaged. We think the instruction was proper in this case.

The verdict and award of damages in this case was $5,000. Appellants contend that this amount is too small, and that a new trial should be granted on that account. After a careful reading of all the evidence in the case, we are satisfied that the appellants have no good reason to complain on this account, and that a much smaller award would have been sustained.

The questions presented which we have not noticed are either decided by what we have said above, or are not deemed of sufficient importance to warrant a reversal.

We find no reversible error in the record, and the judgment is therefore affirmed.

HADLEY, C. J., ROOT, CROW, and DUNBAR, JJ., concur.

RUDKIN, J. (dissenting)—I do not think that the mere fact that a stone quarry cannot be profitably worked at the present time without blasting and casting rock on the property of others, entirely destroys its value as such, and I therefore dissent from the judgment.