[No. 32867.   *En Banc.*   May 26, 1955.]

THE STATE OF WASHINGTON, *Appellant,* v. CANYON LUMBER
CORPORATION *et al., Respondents.*[1]

[1]Reported in 284 P. (2d) 316.

*The Attorney General* and *E. Albert Morrison, Assistant,* for appellant.

John Cheney, J. Allan Evans, Evans, McLaren, Lane, Powell & Beeks, Grosscup, Ambler, Stephan & Miller, David E. Rhea, Sather, Livesey & Kingsbury, and Weter, Roberts & Shefelman, for respondent.

FINLEY, J.—This is an action brought by the state of Washington to recover $105,068.19 (forest fire-fighting costs), incurred by the division of forestry in suppressing a six-thousand-acre forest fire which occurred in Whatcom county, Washington, in September, 1951. The action, as pleaded in appellant's original and first-amended complaint, was based upon slash responsibility, as imposed by Laws of 1951, chapter 235, § 1, p. 742 [cf. RCW 76.04.370], which reads as follows:

"REMOVAL OF SLASH IN FORESTED AREAS.

"AN ACT relative to the liability of persons responsible for slash in forested area; and amending section 76.04.370, R.C.W.

"Be it enacted by the Legislature of the State of Washington:

"SECTION 1. Section 76.04.370 of the Revised Code of Washington, derived from section 4 of chapter 105 of the Laws of 1917, as last amended by section 1 of chapter 58 of the Laws of 1939, is hereby amended to read as follows:

"Any land in the state covered wholly or in part by inflammable debris created by logging or other forest operations, land clearing, or right-of-way clearing and which by reason of such condition is likely to further the spread of fire and thereby endanger life or property, shall constitute a fire hazard, and the owner thereof and the person responsible for its existence shall abate such hazard. If the state shall incur any expense from fire fighting made necessary by reason of such hazard, it may recover the cost thereof from the person responsible for the existence of such hazard or the owner of the land upon which such hazard existed, and the state shall have a lien upon the land therefor enforceable in the same manner and with the same effect as a mechanic's lien. Nothing in this section shall apply to land for which a certificate of clearance has been issued.

"If the owner or person responsible for such hazard refuses, neglects, or fails to abate the hazard, the supervisor may summarily cause it to be abated and the cost thereof may be recovered from the owner or person responsible

therefor, and shall also be a lien upon the land enforceable in the same manner with the same effect as a mechanic's lien. The summary action may be taken only after twenty days' notice in writing has been given to the owner or reputed owner of the land on which the hazard exists either by personal service or by registered letter addressed to him at his last known place of residence."

Respondents demurred on all statutory grounds to the original complaint, and specifically challenged the constitutionality of RCW 76.04.370. This demurrer was sustained, and appellant was given leave to amend. A first amended complaint was filed, joining additional parties and amending certain allegations. This complaint alleges that the slash-covered land comprised about 2,639 acres, and that the slash conditions necessitated the fire-fighting expense for which the state seeks to hold the numerous defendants accountable. The state further alleges that the portion of this slash-covered land, for which each defendant would be responsible under the terms of the statute, varies in amount from about one per cent to approximately twenty-five per cent of the total. The complaint alleges that all of the slash conditions materially contributed to the existence and spread of the fire, and made necessary all the costs incurred by the state in fighting the fire. The complaint prays for judgment against the defendants, jointly and individually, in accordance with their respective liabilities as determined by the court.

To the amended complaint, the respondents demurred on all statutory grounds, and specifically on the basis that RCW 76.04.370 is unconstitutional. At the hearing on the demurrer, the court stated that it would sustain demurrers to the amended complaint on the same basis as expressed in its earlier memorandum opinion. Before an order to this effect was entered, appellant gave notice of its desire to amend further. The court ruled that appellant had no right to amend a second time; whereupon, appellant moved, in open court, for leave to do so. This motion was denied. An order was entered sustaining respondents' demurrer to appellant's first amended complaint, and denying appellant's motion for leave to file a second amended complaint. Judg-

ment was entered, dismissing appellant's action with prejudice, and allowing respondents their costs. From that judgment this appeal was perfected.

Appellant assigns error to the trial court's ruling which sustained respondents' demurrer to the first amended complaint. This was on the basis that RCW 76.04.370 is unconstitutional. Furthermore, error is assigned to the trial court's order refusing to allow appellant to amend its complaint a second time.

█ Respondents move to dismiss this appeal on the ground that it is an appeal on a short record, and that no statement of points has been filed, as required by Rule on Appeal 32, 34A Wn. (2d) 32. This appeal is based upon the action of the trial court in sustaining a demurrer to the complaint. Under the circumstances, no statement of facts is required. Respondents cannot jeopardize appellant's right of appeal by filing a statement of facts, and then insisting that appellant has not complied with the rules on appeal because no statement of points has been filed. The motion to dismiss is denied.

We shall next consider the trial court's order denying the appellant the right or privilege to amend a second time. Appellant maintains that it had an absolute right to amend its pleading within three days after the demurrer was determined adversely to it, and relies upon Superior Court Rule 3 (2), 34A Wn. (2d) 110:

"(2) When a demurrer or motion has been determined, the party to whom the decision is adverse shall have three days in which to plead, unless a different time is fixed by special rule or order."

Respondents contend that the above rule must be read in connection with Superior Court Rule 2, 34A Wn. (2d) 110, which reads, in part:

"A party may at any time before the adverse party has answered or replied, and before the case is set for trial, amend his complaint, answer, or reply *once without leave*." (Italics ours.)

It is clear to us that the position of appellant regarding its absolute right to amend is untenable. This would enable

a party to continue to amend, indefinitely, after demurrers were sustained to pleadings. This court has held that, in a situation involving a conflict between Superior Court Rule 2, *supra,* above stated, and Rule of Pleading, Practice and Procedure 6 (1), 34A Wn. (2d) 71, which also apparently gives the plaintiff absolute right to amend,

". . . these rules should be considered together and that Rule 6 (1) applies only to the original pleadings. A pleading, once amended, cannot be further amended without leave of court, and the granting or denying thereof is addressed to the sound discretion of the trial court." *In re Schnoor's Estate,* 31 Wn. (2d) 565, 198 P. (2d) 184.

■ Without going into a consideration of Rule of Pleading, Practice and Procedure 6 (2), 34A Wn. (2d) 71, which might have made the denial of the second amendment mandatory with the trial court, we are content to say that we do not believe the trial court abused its discretion in denying the second amendment. Appellant's motion for leave to amend a second time was made on the basis of newly discovered evidence; yet there was no affidavit as to the materiality of the evidence, or as to whether it could have been discovered earlier with the exercise of due diligence. The second amendment would have added two new causes of action. In *Hendricks v. Hendricks,* 35 Wn. (2d) 139, 211 P. (2d) 715, we indicated that the true test to be applied in reviewing the exercise of the trial court's discretion in ruling upon a motion seeking leave to amend is to ask the question: Is the opposing party prepared to meet the new issue? We are convinced that the trial court did not abuse its discretion in denying appellant's motion for leave to amend a second time.

The only remaining question to be reviewed is the correctness of the trial court's order sustaining the demurrers to appellant's first amended complaint. Respondents urge that the slash statute is unconstitutional because the act embraces two different subjects, whereas only one of them is contained in the title in contravention of Article II, § 19, of our state constitution which provides:

"No bill shall embrace more than one subject, and that shall be expressed in the title."

The title of chapter 235, Laws of 1951, reads:

"AN ACT relative to the liability of persons responsible for slash in forested area; and amending section 76.04.370, R.C.W."

It is urged that the two subjects embraced by the act are: (1) abatement of slashings and cost thereof; and (2) cost of fire fighting as a result of the existence of the slash hazard. We think that the title here in question is general in scope. All matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, and are germane, are properly included in the act. The rules and cases regarding the application of Article II, § 19, of our state constitution are collected in *Gruen v. State Tax Commission,* 35 Wn. (2d) 1, 211 P. (2d) 651. The title of chapter 235, Laws of 1951 [*cf.* RCW 76.04.370], indicates the substance and scope of the act in such a manner as to put a person of ordinary intelligence on notice and inquiry as to its provisions. *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998. Respondents' arguments are apparently premised upon the assumption that the title of the act here involved is a restrictive and not a general title. We disagree, and must conclude that there is no merit to these contentions of respondents.

It is further contended by respondents that RCW 76.04-.230 involves an unlawful delegation of legislative authority, and is therefore unconstitutional; and that RCW 76.04.370 and RCW 76.04.230 are dependent, and, therefore, that both statutes are invalid. RCW 76.04.230 is a certificate of clearance statute and provides that, under certain circumstances, the state supervisor of forestry may issue a certificate of clearance for any lands upon which a fire hazard exists, and this certificate shall be conclusive evidence of the satisfactory abatement of the fire hazard created by unused material and debris. In a nutshell, respondents' contention that RCW 76.04.230 is unconstitutional is this: It is urged that the supervisor, without any proper standards to guide his actions, is given the power to issue or to withhold a certificate of clearance; that, under such circumstances,

he may act arbitrarily and capriciously, and that the delegation of such uncontrolled power to act is unconstitutional.

█ The certificate of clearance statute makes no reference to the slash statute, but the latter does state that nothing in the slash statute shall apply to land for which a certificate of clearance has been issued. While the certificate of clearance statute is not a part of the slash act, it is *in pari materia* with that act and will, therefore, be considered in connection with it to ascertain the legislative purpose, as though the two were one law. *Paltro v. Aetna Cas. & Surety Co.*, 119 Wash. 101, 204 Pac. 1044. But the question still remains as to whether the two statutes are so dependent that the invalidation of the certificate of clearance statute would cause the slash statute to fall.

We are not convinced that the legislature intended to make RCW 76.04.370 and RCW 76.04.230 dependent statutes. First, the legislative history shows that the two acts developed independently. The first slash act was passed in 1917. The first certificate of clearance act was not enacted until 1927. Second, although the two acts have, so to speak, existed side by side since 1927, there was no reference in the slash act to the certificate of clearance act until 1939. Third, even if the certificate of clearance act should be invalidated, the slash act would still remain a complete, integrated, enforceable act. After a careful study of the two acts, we are not convinced that the legislature enacted the present slash responsibility act with the understanding or solely on the condition that the certificate of clearance act would be valid and continuing, as an effective, operative statute.

█ In view of the foregoing conclusion, and the further fact that respondents never sought to obtain the relief provided for by the certificate of clearance act, they cannot now challenge the constitutionality of RCW 76.04.370 in the manner attempted herein. A person cannot invoke a constitutional objection to part of a statute not applicable to his own particular case unless the unconstitutional feature of that part, if it exists, is of such a character as to render the entire act void. *State v. Walter Bowen & Co.,*

86 Wash. 23, 149 Pac. 330, and cases cited therein; *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560; *State ex rel. Campbell v. Case,* 182 Wash. 334, 47 P. (2d) 24. If the constitutionality of the certificate of clearance act was attacked in a proceeding wherein the provisions of that act were properly challenged, it might or might not be found invalid. But we do not reach that question in this appeal.

Respondents next urge that the slash statute violates the due process clauses of the state and Federal constitutions, because it imposes a sweeping liability which is absolute, and because the statute does not provide any method for determining the amount of damages attributable to each defendant. Considering, first, the absolute liability objection raised by respondents: This statute was obviously enacted on the premise that it was within the police power granted to the states. It is valid, if not unreasonable in application, or arbitrary, or the means adopted are not ill suited to accomplish the end sought. *Nebbia v. New York,* 291 U. S. 502, 78 L. Ed. 940, 54 S. Ct. 505; *Seattle v. Proctor,* 183 Wash. 293, 48 P. (2d) 238; *Shea v. Olson, supra; State v. Sears,* 4 Wn. (2d) 200, 103 P. (2d) 337; *State v. Dexter,* 32 Wn. (2d) 551, 202 P. (2d) 906, 13 A. L. R. (2d) 1081. The slash statute is designed to provide for the removal of a hazard created by logging or right-of-way clearing operations. The sanction imposed, in the event of failure to remove, is liability for fire-fighting costs made necessary by reason of such hazard. The end sought—removal of the hazard—is within the police power of the state as it clearly tends to promote the public safety and welfare, inasmuch as public and private property and the lives of citizens are endangered by the existence of the hazard. The means employed to accomplish this end are not arbitrary or unreasonable in application. No one is held responsible under the statute unless they create the hazard, or suffer it to remain upon their property. The means adopted (creation of liability for failure to remove the hazard) are reasonably well suited to accomplish the end sought, and they directly relate to the evil, the correction of which is the basis given as the justification for the use of such means.

■ Respondents urge that a property owner might be held liable even when the slash had been created by a trespasser, conducting logging operations on the owner's property, even though the owner had no knowledge of the operations conducted and the hazard created. First, the argument seems hypothetical, and may or may not apply to the instant case, when proof is put in upon trial of the case. Second, it is the theory of the law that all property is in the possession of its owner, either in person or by agent. *Windsor v. McVeigh*, 93 U. S. 274, 23 L. Ed. 914; *Portland & Seattle R. Co. v. Ladd*, 47 Wash. 88, 91 Pac. 573. It assumes too much to say that a property owner would be completely without fault if he so neglected to watch over or to attend his property that another came upon it and logged it without the owner's knowledge, thereby creating a fire hazard.

Respondents cite an Oregon case wherein a statute was held violative of due process because it subjected a property owner to liability for fire which was caused, or escaped from, his land, *accidentally or unavoidably*. Again, this may or may not be the situation here, but at the present stage of the case, there is nothing in the amended complaint to support respondents' assumed factual situation. As mentioned heretofore, no liability will result under RCW 76-.04.370, unless the party liable has either created the hazardous condition, or has suffered it to remain upon his land. We conclude that RCW 76.04.370 is a valid exercise of the police power.

■ Respondents next contend that the slash statute violates due process, because the statute does not make any provision for determining the amount of damages attributable to each defendant. A demurrer to a complaint presents no question as to the extent of the recovery to be had or the rule that shall govern in measuring damages. *Larson v. Marsh*, 144 Neb. 644, 14 N.W. (2d) 189, 153 A. L. R. 101; *Sutter v. General Petroleum Corp.*, 28 Cal. (2d) 525, 170 P. (2d) 898, 167 A. L. R. 271; 15 Am. Jur., Damages, 752, § 310. The foregoing rule would appear to preclude the respondents from raising by demurrer the question of the

measure of damages which should apply. However, since respondents specifically challenged the constitutionality of the slash statute, and one of the grounds of alleged unconstitutionality was the absence of a provision in the statute for allocation of damages, we shall consider the question of the necessity of such a provision in the statute, but not the question of the rule of damages which should apply.

Respondents argue that the statute does not provide any workable plan for apportioning liability among the parties defendant. It appears to us that the matter of apportioning liability among the parties simply requires the application of common-law principles of joint and several liability. This question will not be reached until evidence of the damages (fire fighting costs) has been introduced. The slash statute states that, if a hazard (slash and debris) exists, then the person responsible for the existence of the hazard, or the owner of the land on which it exists, shall be liable for the costs of fire fighting made necessary by reason of such hazard. This statute creates an absolute liability just as another statute (RCW 16.04.010) creates absolute liability when livestock of one man damage the land of another. However, if the cattle of several owners went on to the land of a third person and there did damage to the crops, it could not reasonably be argued, (a) that the injured party could not rely upon the statute because it did not have appended thereto a provision for apportioning liability in the event there should be multiple defendants, and (b) that the statute, therefore, was invalid or afforded no due process, because it lacked certainty. The slash statute is not invalid for want of certainty.

The objections to RCW 76.04.370 which have been raised by respondents are either disposed of in this opinion, or lacked sufficient persuasiveness to merit discussion. The respondents' demurrers to the first amended complaint were incorrectly sustained. The judgment of dismissal is reversed and the cause is remanded for further proceedings.

HAMLEY, C. J., MALLERY, and WEAVER, JJ., concur.

HILL and DONWORTH, JJ. (concurring in the result)—We

are in accord with the majority on the constitutional issue presented and, in fact, on all issues except the matter of whether the trial court abused its discretion in refusing the state permission to again amend its complaint. Matters of great public importance are here involved, many of them raising questions of first impression. Under such circumstances, the state, in its efforts to get all issues before the court, should have been given more latitude than the trial court allowed.

SCHWELLENBACH, J. (dissenting)—I am of the opinion that the act delegated to the supervisor the power to issue or to withhold a certificate of clearance without any proper standards to guide his actions.