[No. 297-3. Division Three. July 7, 1971.]

THE STATE OF WASHINGTON, *Appellant,* v. LIVIA C. WACHSMITH *et al., Respondents.*

*Slade Gorton, Attorney General, Joseph B. Loonam* and *William G. Boland, Assistants,* for appellant.

*Bruce P. Hanson* (of *Hanson & Lust*), for respondents Wachsmith.

*J. Hugh Aaron* (of *Lyon, Beaulaurier, Aaron & Weigand*), for respondent Triangle Sand and Gravel Co.

GREEN, J.—Petitioner, State of Washington, brought this action to condemn interests in certain lands belonging to respondent Livia C. Wachsmith for the purpose of constructing a segment of a limited-access highway near Yakima known as SR 12. The state appeals from the judgment and decree of appropriation awarding respondent $230,000 upon a jury verdict.

Respondent was the owner of property consisting of about 86 acres of improved orchard land, 16 acres of hillside and 130 acres of gravel area through which the Naches River meanders. The condemnation severs the orchard land from about 100 acres of gravel area and the 16 acres of the hillside property, interfering with access to the latter properties. This gravel area was under 15-year lease to respondent, Triangle Sand and Gravel Co. It was removing sand and gravel when this proceeding was started. The jury answered a special interrogatory fixing the fair market value of the leased land within the take and damage to the remainder at $90,000.

When the state rested its case, Preston Shepherd, a civil engineer, testified on behalf of respondents as to the estimated quantity of rock, sand and gravel within the area taken. The state objected to the allowance of testimony by this witness as to the quantity of material lying between the banks of the Naches River unless respondents could show they had obtained a permit from the state supervisor of flood control under RCW 86.16.080[1] and from the state director of fisheries and game under RCW 75.20.100.[2] The evidence fails to show the existence of such a permit. Notwithstanding, the trial court overruled the objection

[1]RCW 86.16.080 provides: "No person, firm, association or corporation, . . . shall have the authority . . . to construct, . . . works affecting flood waters within any flood control zone, established under the provisions of this chapter, or to operate or maintain any such structure or work hereafter constructed, reconstructed or modified *without a written permit from the state supervisor of flood control applied for and issued in accordance with such general rules and regulations as shall be established and promulgated for the purpose under the provisions of this chapter* . . ." (Italics ours.)

[2]RCW 75.20.100 provides: "In the event that any person or government agency desires to construct any . . . project or other work that will use, divert, obstruct, or change the natural flow or bed of any river or stream or that will utilize any of the waters of the state or materials from the stream beds, *such person or government agency shall submit to the department of fisheries and the department of game full plans and specifications of the proposed construction or work, complete plans and specifications for the proper protection of fish life in connection therewith, the approximate date when such construction or work is to commence, and shall secure the written approval of the*

and allowed the testimony. The court in effect said that while the state was entitled to an instruction as to the restrictions imposed by the statutes, it was not entitled to assume respondents could not meet these restrictions and obtain permission to extract the gravel. Error is assigned to this ruling; we believe the testimony was properly allowed.

The state relies upon *State v. Motor Freight Terminals, Inc.*, 57 Wn.2d 442, 443, 357 P.2d 861 (1960) in support of this assignment of error. In that case, the court held the value of a piece of property is limited to the uses available under existing zoning regulations unless it is shown there is a reasonable probability the prohibition or restriction will be modified or removed in the near future. We do not believe this rule is applicable here. Respondent is not absolutely prohibited from extracting gravel from the riverbed under the two statutes involved. One desiring to remove gravel is only required to make application for permits to extract it. Whether the permits will issue or not depends upon whether the applicant meets the requirements of the statutes and regulations adopted by the departments pursuant thereto. On the other hand, the zoning ordinance is an absolute prohibition on the use of property until the ordinance is changed by the legislative body.

The other cases cited by the state are likewise not applicable. *Portland & Seattle Ry. v. Ladd*, 47 Wash. 88, 91 P. 573 (1907), and *Tacoma Eastern R.R. v. Smithgall*, 58 Wash. 445, 108 P. 1091 (1910), are cases holding the jury should have been instructed that if a proposed highest and best use would damage an adjoining owner's property or riparian rights the proposed use should be disregarded. In *Seattle & Montana Ry. v. Roeder*, 30 Wash. 244, 70 P. 498 (1902), it was held proper to show on the issue of damage that operation of a quarry after condemnation of a railroad

*director of fisheries and the director of game as to the adequacy of the means outlined for the protection of fish life in connection therewith and as to the propriety of the proposed construction or work and time thereof in relation to fish life, before commencing construction or work thereon."* (Italics ours.)

It is a misdemeanor to violate this statute.

right-of-way could be done only with great care. The court, in *Bellingham Bay & British Columbia R.R. v. Strand*, 4 Wash. 311, 30 P. 144 (1892), declared that rights which could only be acquired by legislative enactment could not attach to the property being valued. In the instant case, the proposed highest and best use is not prohibited but may be granted pursuant to statute upon proper application.

▐ Aside from the foregoing discussion, the state in its case in chief offered testimony as to the value of the gravel, sand and rock contained in the riverbed. Arden France, an appraiser, testified the highest and best use of the land leased to Triangle was as gravel land. He valued the area between the banks of the river at $300 per acre. James Slavin, another expert witness, found the highest and best use to be for recreational purposes. He valued the leased land at $900 per acre, including the riverbed. Slavin testified he included the riverbed because in this area there was evidence of frequent changes in its course. The state, having offered testimony as to the value of the land within the riverbed for gravel purposes through France, and for recreational purposes through Slavin, is hardly in a position to object to the testimony of Shepherd as to the quantity of gravel contained within the riverbed. *Cf. Johnston v. Medina Improvement Club, Inc.*, 10 Wn.2d 44, 116 P.2d 272 (1941).

Error is assigned to the refusal to allow certain rebuttal testimony offered by the state. The trial judge refused to allow Gregory Hastings, an employee of the Department of Water Resources, and Ralph B. Anderson, an employee of the Department of Fisheries, to testify as to whether a permit would be granted to extract gravel from the riverbed. This testimony was offered to rebut the testimony of Shepherd and Louis J. Leita, president of Triangle. Leita testified he could obtain a permit from the state to remove gravel from the riverbed even though at the time of trial he admitted his present permit prohibited it. This permit was to expire in a few months.

Hastings was the officer who signed the existing permit.

His testimony disclosed he was a member of a board of three persons who would review any application for renewal of that permit and make a recommendation to the director of water resources who would actually grant or deny the application. When asked what restrictions he would impose in any renewal of the permit, an objection was interposed and sustained. Anderson testified he was the person who would review a request for a permit under RCW 75.20.100 and make recommendations to the director of fisheries and game. The court likewise refused to allow Anderson to testify as to whether or not an application for a permit would be granted in favor of Triangle. Error is assigned to each of these rulings. We believe the trial court correctly excluded this testimony.

The opinion of these witnesses was not final; neither were they the final authority in the department. In each instance it was the director of the agency who ultimately approved or disapproved an application. Hastings testified his department's decision was appealable; therefore, it was not final. The jury had before it the existing permit prohibiting the extraction of gravel from the riverbed. The state was afforded the opportunity to present such evidence as it deemed appropriate to show the criteria and regulations under which permits are granted or denied. With such information, the jury was in a position to weigh the valuation testimony in light of this evidence and reach its conclusion. The admission and precise limits of rebuttal evidence is within the trial court's discretion. *W. E. Roche Fruit Co. v. Northern Pac. Ry.,* 184 Wash. 695, 52 P.2d 325 (1935); *Kelly v. Department of Labor & Indus.,* 172 Wash. 525, 20 P.2d 1105 (1933). We find no abuse of discretion in this case.

Judgment affirmed.

MUNSON, C.J., and EVANS, J., concur.

Petition for rehearing denied August 30, 1971.

Review denied by Supreme Court October 5, 1971.